## Louisville & N. R. Co. v. Dry Branch Coal Co.

(Decided Nov. 28, 1933.)

ASHBY M. WARREN and LOW & BRYANT for appellant.
TUGGLE & TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

In June, 1918, the Louisville & Nashville Railroad Company and the Dry Branch Coal Company, a corporation, entered into an agreement, by which the Dry Branch Coal Company agreed to pay to the Louisville & Nashville Railroad Company, according to accounts kept by it, cash for materials and skilled labor, to lay certain railroad tracks. The contract set out in detail the method of laying the tracks, their location, and the stipulations of the parties respecting same.

In July, 1918, the Dry Branch Coal Company and the Asher Coal Mining Company, a corporation, were the owners of adjoining lands on Dry Branch in Bell county, and contemplated installing plants on their respective land for the purpose of mining coal thereon. The Dry Branch Coal Company at that time had located a line of railroad, a spur track, to the main line of the Kentucky and Virginia division of the Louisville & Nashville Railroad Company, on the left-hand side, going up Dry Branch, extending through the lands of both parties.

The Louisville & Nashville Railroad Company at that time had granted to the Dry Branch Coal Company the right to connect its spur track with its main line.

The Dry Branch Coal Company by its contract with the Asher Coal Mining Company conveyed to it so much of its right of way as was located through the land of the Dry Branch Coal Company for the construction of a spur track up Dry Branch, 50 feet on each side of the center line of the right of way. It also agreed to convey land on the right-hand side of the right of way, going up the branch, owned by it on that side of the right of way, in exchange for an equal number of acres owned by the Asher Coal Mining Company, on the left-hand side of the branch, going up, and parallel with, and adjoining, the upper line of the Dry Branch Coal Company for a distance of about 150 feet to the top of the mountain. It transferred the rails, splices, spike frogs, and equipment it had purchased for the purpose of using in the construction of the spur track, except ''sufficient to set rails, splices, spike frogs and other equipment to construct the spur or switch near the proposed tipple'' of the Dry Branch Coal Company, ''of sufficient capacity to haul and handle three coal cars a day.'' The rails, splices, spike frogs, and other equipment necessary for the purpose of constructing this switch were expressly reserved in the contract, and it was provided that the switch was to be constructed and maintained solely at the expense of the Dry Branch Coal Company. The Asher Coal Mining Company agreed to construct the spur and have it ready in six months. All the rights of the Dry Branch Coal Company acquired by it under its contract with the Louisville & Nashville Railroad Company were transferred or assigned to the Asher Coal Mining Company, except as expressly reserved in the contract. The Dry Branch Coal Company and the Asher Coal Mining Company each agreed to pay one-half the cost of maintenance and other expenses in connection with the spur from the switch of the Dry Branch Coal Mining Company to the connection of the Louisville & Nashville Railroad Company, in proportion to the tonnage each party carried over the spur, reserving equal rights in its use. The expense of maintenance and other expenses of the spur above the switch were to be borne exclusively by the Asher Coal Mining Company, which it was to construct at its own expense. The contract carried other provisions not herein involved.

In May, 1920, the Louisville & Nashville Railroad

Company and the Asher Coal Mining Company entered into a written contract. The Louisville & Nashville Railroad Company agreed to furnish the rails and track material, exclusive of ties, complete the construction and system of mine tracks, diverging from its main track on its Cumberland Valley division, on the east side thereof, 2,963.3 feet north of mile post, 219, going from Louisville, and running in a southeasterly direction, according to a sketch agreed upon by the parties; the Asher Coal Mining Company doing the grading, furnishing the switch ties, and paying the actual cost of labor of laying the tracks, and "the cost of all other material," except the rails and splices. The Asher Coal Mining Company agreed to pay the Louisville & Nashville Railroad Company as rent 6 per cent. per annum payable semiannually, from the date of the completion of the tracks, of the value of the rails and splices used in the construction. It, by a provision of the contract, conveyed to the Louisville & Nashville Railroad Company a right of way 15 feet in width on each side of the center line "of each and every track constructed," the full length thereof, except such portions of the tracks that may be located on the land of the Louisville & Nashville Railroad Company, the right granted to revert to the Asher Coal Mining Company when the tracks should thereafter be removed. The rails, splices, and control of same were reserved to the Louisville & Nashville Railroad Company, the Asher Coal Mining Company maintaining and keeping the same in good condition at its own expense. It was further stipulated in the contract that the entire cost of all switches, and ties required by the contract, including those used in making connection with the tracks of the main line of the Louisville & Nashville Railroad Company and all cost of repairs and renewal of the switch ties, were to be paid by the Asher Coal Mining Company. The cost of protecting or controlling trains, all automatic or other signals, the changes and additions thereto, were to be paid for by the Asher Coal Mining Company, as the cost of constructing the tracks. It was agreed that, "upon the termination of this contract for any reason," the Asher Coal Mining Company was to pay the Louisville & Nashville Railroad Company the actual cost of removing the tracks according to its accounts. The contract stipulated that the Asher Coal

Mining Company should not have the right to transfer the contract without the written consent of the Louisville & Nashville Railroad Company.

The Asher Coal Mining Company, the See See Coal Mining Company, and the Louisville & Nashville Railroad Company, on May 5, 1920, entered into a contract in which it was recited that the Louisville & Nashville Railroad Company had constructed a system of mine tracks about 4,885 feet in length at Kerrick for the Asher Coal Mining Company, and that, ''for value received,'' the Asher Coal Mining Company assigned to the See See Coal Mining Company ''all of its rights, title and interest,'' which it had by virtue of, and under, the contract dated May 5, 1920, between the Asher Coal Mining Company and the Louisville & Nashville Railroad Company. The See See Coal Mining Company agreed to accept the contract between the Asher Coal Mining Company and the Louisville & Nashville Railroad Company, and to abide by, and perform, all of its stipulations, terms, and conditions, except as therein provided. The contract stipulated that the See See Coal Mining Company agreed to pay as rent on rails and ties at the rate of $3 per ton per annum, instead of at the rate of 6 per cent. per annum, as stated in the contract between the Asher Coal Mining Company and the Louisville & Nashville Railroad Company. In consideration of the above-mentioned obligations on the part of the See See Coal Mining Company, the Louisville & Nashville Railroad Company consented to the transfer and assignment by the Asher Coal Mining Company to the See See Coal Mining Company of the contract of May 5, 1920.

It will be noted that, in its contract with the Asher Coal Mining Company, the Dry Branch Coal Company sold to the former ''the rails, splices, spike frogs and equipment purchased by it for the purpose of using them in the construction of the spur,'' except those sufficient to construct the spur or switch near the tipple of the Dry Branch Coal Company, of sufficient capacity to handle three coal cars per day. The Louisville & Nashville Railroad Company removed ''the rails, splices, spike frogs and equipment'' belonging to the Dry Branch Coal Company, constructed near its tipple under its contract with the Asher Coal Mining Com-

pany. This action was instituted to recover their alleged value, $895.97.

In its answer the Louisville & Nashville Railroad Company asked that the petition be dismissed and that it recover of the Dry Branch Coal Company, $609.47. After the reply was filed, the court sustained a demurrer to its answer, set-off, or counterclaim as amended. The reply was withdrawn, and it was agreed that it did take the track material mentioned in the petition, the title to which was in the Dry Branch Coal Company, and that the full market value thereof was $500. The court rendered judgment against it for the $500, with interest from September, 1932, and costs. From the judgment sustaining the demurrer to the set-off or counterclaim this appeal is prosecuted. The sole question for consideration is the sufficiency of the allegations of the answer setting up the set-off or counterclaim. The cause of action of the Dry Branch Coal Company is one of tort. The set-off or counterclaim asserted did not grow out of, or arise from, the cause of action stated in the petition. Except for the allegation of insolvency, the action of the court in sustaining a demurrer might well be rested upon this ground. Civil Code of Practice, sec. 96, subsec. 1; Duff v. Wilking, 203 Ky. 817, 263 S. W. 373; Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309. We shall consider the ground presented in the briefs of the parties.

After the system of mine tracks was constructed up Dry Branch, and after the contract between the Asher Coal Mining Company and the Louisville & Nashville Railroad Company was assigned with the consent of the latter to the See See Coal Mining Company, there had accumulated for the rental, repairs, and upkeep from April, 1922, to and including November, 1926, the sum of $1,995.71, of which the See See Coal Mining Company had paid $864.45, leaving a balance of $1,-131.26. The Louisville & Nashville Railroad Company recovered at the March term, 1927, of the Bell circuit court, against the See See Coal Mining Company, judgment for the $1,131.26 and costs. In November, 1927, the mine tracks up Dry Branch were removed under clause No. 5 of the contract between the Louisville & Nashville Railroad Company and the Asher Coal Mining Company. After deducting cost of the tracks, as authorized by clause No. 12 of the contract, there was a

net credit of $521.79 on account of the material in the tracks furnished by the Asher Coal Mining Company, which included the material owned by the Dry Branch Coal Company, and for which the judgment was rendered in its favor of $500. The $521.79 was credited on the $1,131.26, leaving a balance of $606.47, including the interest and costs, yet unpaid on its judgment against the See See Coal Company. It is charged that the Dry Branch Coal Company had never paid anything on the rental, repairs, and upkeep of the tracks. Also it is charged that the Louisville & Nashville Railroad Company did not know of the existence of the contract between the Dry Branch Coal Company and the Asher Coal Mining Company with respect to the construction, upkeep, and maintenance of the mine tracks, until after it had moved the material therein; that the track material which it removed was in possession of the Asher Coal Mining Company at the time it was incorporated in the mine tracks, and that the Louisville & Nashville Railroad Company believed it belonged to the Asher Coal Mining Company, and had no knowledge that the Dry Branch Coal Company owned or claimed any interest in the material. It is charged that the Dry Branch Coal Company and the See See Coal Company were insolvent and out of business, and that unless it received the benefit, or the value, of the material (claimed by the Dry Branch Coal Company), it would lose its credit therefor on its judgment.

As authority to sustain its contention it presents Blakeley v. Adams, 113 Ky. 392, 68 S. W. 393, 24 Ky. Law Rep. 263; First National Bank v. Doherty, 156 Ky. 386, 161 S. W. 211; Bryant v. Jones, 183 Ky. 298, 209 S. W. 30; Chesapeake & Ohio Railroad Company v. Wadsworth Electric Manufacturing Company, 234 Ky. 645, 29 S. W. (2d) 650, and Fischer v. James A. Diskin Company, 247 Ky. 694, 57 S. W. (2d) 538.

The principle deducible from them ''is that one for whose benefit the contract is made may maintain an action thereon, although a stranger to the consideration, and a contract is made for the benefit of a party, who has a direct, legal or equitable interest in its performance.''

The facts in the cases in which this principle has been recognized and applied by the courts are not analogous to those in the present one.

The logic of the insistence of the railroad company is that it is admittedly a trespasser; that the Dry Branch Coal Company is indebted to the See See Coal Company under its contract with the See See Coal Company, concerning the property a part of which was involved in the trespass, and that it and the See See Coal Company are insolvent, and, unless the railroad company is permitted to collect its debt against the See See Coal Company by offsetting it against its liability to the Dry Branch Coal Company for the trespass, it will sustain a loss to the amount of $1,131.26.

Under the allegations of its pleading the relations of the Louisville & Nashville Railroad Company and the See See Coal Company are those of creditor and debtor, and the relations of the former and the Dry Branch Coal Company are those of a trespasser and an owner. To construe it otherwise is to be forgetful of its allegations. The contract of the Louisville & Nashville Railroad Company with the See See Coal Company conferred authority on the railroad company to remove the property owned by the latter, embraced by their contract, but when the railroad company removed the property of the Dry Branch Coal Company, without its consent, and appropriated it to its use, it went beyond the provisions of their contract, hence became a trespasser as to the Dry Branch Coal Company.

It cannot invoke the equitable principle urged to protect itself against its liability as a trespasser, for such liability is not within the contemplation of either of the contracts set up in the answer and counterclaim, though the trespass was not wilful and the parties thereto were, or afterward became, insolvent.

The fact that the several contracts deal with the same subject-matter affords the Louisville & Nashville Railroad Company no defense, set-off, or counterclaim to its liability for trespassing on the property of the Dry Branch Coal Company, not authorized by either of them.

To entitle a stranger seeking to recover under a contract asserted by him to have been made for his benefit it is indispensably essential that he allege and prove that the contract was intended for his benefit in the sense that it embraces the claim asserted by him. Standard Oil Company of New Jersey v. National Surety Company, 234 Ky. 764, 29 S. W. (2d) 29; Fi-

delity & Casualty Company of New York v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924; Phillips v. Kentucky Utilities Company, 206 Ky. 151, 266 S. W. 1064; William Burford & Company v. Glasgow Water Company, 223 Ky. 54, 2 S. W. (2d) 1027, 62 A. L. R. 1195. The allegations of the answer and set-off or counterclaim fall far short of this requirement.

The fact that this court has recognized the often reiterated principle that "one for whose benefit the contract is made, may sue thereon, even if he be a stranger to the consideration," does not warrant us to go further and say that a contract entered into for his benefit also protects him in the commission of a trespass on the property of another while endeavoring to assume possession of property covered by his contract, as such extension would remove all limitations of the rule and result in unlimited liability on the part of the contracting parties. Spurrier et al v. Burnett et al., 207 Ky. 736, 270 S. W. 25.

The Louisville & Nashville Railroad Company invokes the doctrine of estoppel to protect it against its liability as a trespasser. Its argument sustaining the application of this doctrine is based on the allegation that, at the time the trespass was committed, it did not know or have information that the Dry Branch Coal Company was the owner of the property described in its petition, and that its agents were present and observed its commission of the trespass. The fact that it lacked knowledge or information of the ownership of the Dry Branch Coal Company of the property at the time it took possession of the same, and that the latter's representatives were present and made no objection, cannot be interposed as a defense to the trespass; nor constitute a set-off or counterclaim. The same amounts to no more than the establishing that the trespass was not wilful.

The judgment of the trial court being in harmony with our views, it is affirmed.