# Louisville & N. R. Co. v. Dry Branch Coal Co.

(Decided March 25, 1938.)

(As Extended on Denial of Rehearing June 21, 1938.)

ASHBY M. WARREN and H. L. BRYANT for appellant.

TUGGLE & TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

The appellee, Dry Branch Coal Company, and the appellant, Louisville & Nashville Railroad Company, entered into a written contract by the terms of which a branch spur of railroad track was to be built under certain provisions of that contract not necessary at this point to be set out.

Later, appellee came to the conclusion that it was not convenient or expedient for it to carry out its written contract with appellant, so on the 4th day of July, 1918, it entered into a written contract with an adjoin-

ing property owner, the Asher Coal Mining Company, which was more experienced than it in building railroads. By the terms and stipulations of that contract it was agreed among other things that the Asher Coal Mining Company was to construct the branch spur of railroad track up Dry Branch instead of appellee, which, when constructed, was to be for the use and benefit of both parties in developing their adjoining coal properties and in shipping the products of their mines over appellant's line of railroad. That contract, with other provisions not necessary to be noted, contains the following provisions:

"* * * And the said party of the first part (Dry Branch Coal Company) has a written contract with the Louisville & Nashville Railroad, wherein the said Louisville & Nashville Railroad, among other things, grants to the party of the first part the right to connect said spur tracks with the main line of said railroad upon the terms and conditions of said contract which is here referred to and is to be read as a part of this contract.

"Each party hereto is to have equal rights in the use of said spur road, and each is to pay for the cost of maintenance and other expenses in connection with said spur from the first party's switch to the connection with the Louisville & Nashville Railroad in proportion to the tonnage of each party carried over said spur."

Under that provision of the written contract the branch line railroad track was constructed by the Asher Coal Mining Company and used jointly by the contracting parties. Finally, the Asher Coal Mining Company made a lease to another coal company, known as the See See Coal Company, and that company operated over and used the spur under the lease for a time not made known. During the operation by the parties, there was a balance unpaid due appellant on the 14th day of February, 1927, for the use and maintenance of the track as authorized by the written contracts, of $1,131.26.

Appellant instituted an action in the Bell circuit court against the See See Coal Company and recovered a judgment of $609.47, balance due for the maintenance of the spur track, which resulted to it by reason of the contracts for the use and maintenance of the spur

track connecting the mines of the respective mining properties with appellant's main railroad. Later, the mining operation ended, as well as the use of the spur track of railroad. Under the written contract with the Asher Coal Mining Company of July 4, 1918, there was a provision that certain materials left from the building of the track, etc., belonged to the railroad company, when the track was abandoned, and it had a right to remove it. In removing what it thought to be its own property, it wrongfully removed certain pieces of property that belonged to the Dry Branch Coal Company, when it entered into the written contract of July 4th with the Asher Coal Mining Company. This property appellant converted to its own use and benefit.

As a result, the Dry Branch Coal Company instituted an action against the Louisville & Nashville Railroad Company in the Bell circuit court seeking a judgment for the value of its property so converted. In that action, appellant filed its answer, counterclaim, and set-off, wherein it pleaded the contract of July 4th that the Dry Branch Coal Company made with the Asher Coal Mining Company, and alleged that it was made for its benefit, the beneficiary third party, under that contract, and it sought to apply by way of set-off and counterclaim the judgment of $609.47 it had obtained against the See See Coal Company in satisfaction of appellee's claim for damages. A general demurrer was sustained to its set-off and counterclaim. An appeal was prosecuted to this court.

In the case of Louisville & Nashville Railroad Co. v. Dry Branch Coal Company, 252 Ky. 124, 65 S. W. (2d) 1008, 1010, the facts are well, fully, and succinctly set out in that opinion on which appellant predicated its right of set-off and counterclaim. We see no good reason to restate the facts here. It will be observed that the basis or grounds for affirmance were solely and exclusively on the point that the judgment sought by the Dry Branch Coal Company was predicated on the sole ground that the action was one of tort, and, as the judgment pleaded as a set-off and counterclaim was grounded on a contract and did not arise out of and from the cause of action alleged and sued on by the Dry Branch Coal Company, for that reason alone, it could not be pleaded as a set-off and counterclaim, even if the Dry Branch Coal Company and the See See Coal

Company were both insolvent. The reasons for that conclusion are fully set out in that opinion.

Following that opinion, this action was instituted in the Bell circuit court in equity against appellee for the sole and only purpose of obtaining an injunction, enjoining appellee from having an execution issued against it and from collecting its judgment because of and for the reason that appellee and the See See Coal Company were each insolvent (which insolvency is admitted), and for the purpose of setting off the judgment it had against the See See Coal Company of $609.47 against the judgment the Dry Branch Coal Company had against it for $500.

In the instant case, practically the same allegations are made as the basis for appellant's right to enjoin and prevent appellee in collecting the judgment it holds against it and for recovering from appellee the balance due appellant for the cost of maintaining a spur track as set out in the contract of July 4, 1918, amounting to the alleged balance of more than $1,100. By a stipulation in the record, it is agreed that under the contract of July 4, 1918, between appellee and the Asher Coal Mining Company the expense of the upkeep of the railroad amounted to as much as $500, and that no part was paid by appellant. The chancellor dismissed appellant's petition and thereby denied it any relief. This appeal follows.

The first question involved is, Could appellant as an original proposition hold appellee responsible for the balance due it for the maintenance of the spur track built for its use and benefit? If that can be answered in the affirmative, then the liability of appellee becomes certain, its insolvency and that of the See See Coal Company being admitted, unless its cause of action was defeated by reason of the plea of res judicata made by appellee in its answer. To clearly pass upon that question, it becomes necessary to disclose parts of the contracts of June 20, 1918, and July 4, 1918, that particularly pertain to the question involved. The parties to the contract of June 20, 1918, are appellant and appellee. So far as is applicable to the question we have under consideration, that contract provides:

"(1) That the Louisville & Nashville Railroad Company agrees to permit and supervise the con-

structions of mine tracks of about 4,885 feet in total length. * * *

"(2) The second party agrees to pay to the first party in cash for all materials furnished by it, and the actual cost of such skilled labor of laying said tracks as is furnished by the first party, according to the accounts kept by first party. * * *"

The contract of July 4, 1918, between the Dry Branch Coal Company and the Asher Coal Mining Company, so far as applicable, provides:

"Whereas, under contract, dated June 20, 1918, the Louisville & Nashville Railroad Company agreed to permit and supervise the construction of a system of mine tracks about 4,885 feet in total length for the Dry Branch Coal Company:

"For Value received the Dry Branch Coal Company hereby transfers and assigns to the Asher Coal Mining Company all rights, title and interest which it has by virtue of and under the within contract dated June 20, 1918, between the Dry Branch Coal Company and the Louisville & Nashville Railroad Company.

"The said Asher Coal Mining Company agrees to perform and abide by all the stipulations, terms and conditions of the said contract as fully as if the said contract had originally been made with the Asher Coal Mining Company instead of the Dry Branch Coal Company. * * *

"That whereas the parties to this agreement own adjoining coal lands on Dry Branch in Bell County, Kentucky, and each of them contemplates installing plants on their respective lands for the purpose of mining the coal therein, and whereas the party of the first part has located a line of railway for a spur track from the main line of the Kentucky and Virginia Division of the Louisville & Nashville Railroad Company up the left hand side going up Dry Branch extending in part through the land of each of the parties, and the said party of the first part has a written contract with the Louisville & Nashville Railroad Company, wherein the said Louisville & Nashville Railroad Company among other things grants to the party of the first part the right to connect said spur tracks with the

main line of said railroad upon the terms and conditions of said contract which is here referred to and is to be read as part of this contract. * * *

"Each party hereto is to have equal rights in the use of said spur road, and each is to pay for the cost of maintenance and other expenses in connection with said spur from the first party's switch to the connection with the Louisville & Nashville Railroad Company in proportion to the tonnage of each party carried over said spur."

Analyzing these excerpts from the two contracts, we reach the conclusion that the road built by the Asher Coal Mining Company was for the purpose of carrying out the contract of June 20, 1918, with the railroad company. That contract provided that the material furnished for the spur track by appellant was to be paid for and the road maintained by appellee. Under the July contract, it was specifically agreed that the contract with the railroad company of June 20, 1918, was to be carried out and, after the road was built, each party was to have equal rights to the road and its use and was to pay one-half of the maintenance and expenses of the spur track connecting appellant's main road to their respective mines. It is stipulated in the record that appellee has paid nothing for the maintenance to appellant; that it shipped and hauled enough over the railroad spur to amount to $500. Under the terms of the contract, there being no evidence that appellant agreed at any time to relieve appellee of its original obligation under the contract of June 20, 1918, or July 4, 1918, and no evidence that appellant agreed to a substitution of the Asher Coal Mining Company or the See See Coal Company, or any other company, in lieu of or instead of appellee, and no agreement to relieve appellee of the obligation to it by virtue of the June contract, it follows we think that appellant could maintain an action for the balance due it against appellee.

It is at the present time in Kentucky an established rule, as well as in a large majority of American jurisdictions, that it is the right of a third party who has been benefited under a contract that was entered into for its benefit to sue for a breach.

In the case of North Western Mutual Life Insur-

ance Company v. Eddleman et al., 247 Ky. 116, 56 S. W. (2d) 561, 563, 87 A. L. R. 276, we said:

"In this jurisdiction a party for whose benefit a contract is made may sue thereon in his own name, although the undertaking is not directly to or with him. See cases in note (3) to section 18 of the Civil Code of Practice, and also the case of Blakeley et ux. v. Adams, 113 Ky. 392, 68 S. W. 393, 24 Ky. Law Rep. 263, and others cited in those opinions." See, also, Carson Pirie Scott & Co. v. Parrett et al., Ex'r, etc. of John Harrison, Deceased, 346 Ill. 252, 178 N. E. 498, 81 A. L. R. 1262.

The courts of England in the old case of Tweddle v. Atkinson, [1861] 1 Best & S. 393, 121 Eng. Reprint, 762, established the rule that third parties could not enforce contracts made between others for his benefit. That rule is still followed by many of the New England States and possibly some of the Southern States, but at the present time a large majority of the state courts have refused to follow that rule, because it is unsound and based upon reasoning that is neither sound, brilliant, nor forceful. In its stead, this rule is followed almost entirely by the majority of the courts, which is, that it is the right of equity to grant relief to the beneficiary in such cases. To be more accurate, the rule now, which is generally followed, is:

"That one for whose benefit a contract is made may, although not a party to the agreement and not furnishing the consideration therefor, maintain an action thereon against the promisor. In other words, a third person can enforce a contract entered into between others for his benefit." See 81 A. L. R. 1279; Hendrick v. Lindsay, 1876, 93 U. S. 143, 23 L. Ed. 855, Steward v. Sirrine, 1928, 34 Ariz. 49, 267 P. 598; Calhoun v. Downs, 1931, 211 Cal. 766, 297 P. 548 (statutory provisions); Merchants' Union Trust Company v. New Philadelphia Graphite Company, 1912, 10 Del. Ch. 18, 83 A. 520 (recognizing the right of the third party to recover where the contract was intended for his benefit, and where there was some obligation owing by the promisee to him.); Miller v. Farr, 1912, 178 Ind. 36, 98 N. E. 805; Chesapeake & O. Railway Company v. Wadsworth Electric Manufacturing

Company, 1930, 234 Ky. 645, 29 S. W. (2d) 650, and other cases that might be cited.

It is inequitable and wrong for appellee to compel appellant to pay the judgment it has (the See See Coal Company and appellee being insolvent), when by applying these equitable principles there is no loss to appellee, but, on the other hand, enables appellant to obtain in equity what it could not do at law, because of the insolvency aforesaid.

We see no good reason why the rules referred to do not apply to the case at hand. Appellant was by the terms of the contract such a beneficiary that it is entitled to the relief sought, unless the further plea of res judicata precludes it. Appellee insists that the allegations of the answer, counterclaim, and set-off in the case of Louisville & Nashville Railroad Company v. Dry Branch Coal Company, supra, were substantially the same as the allegations of appellant's petition in the instant case, and further insists that, as the demurrer was sustained by the chancellor in that case, and his judgment affirmed by this court, the matters and things set out in appellant's petition have been fully and completely adjudicated, and that adjudication estops appellant from the relief sought in this action. In other words, it is claimed that that judgment is a bar to appellant's recovery in this action.

The allegations in appellant's petition in equity, in the instant case, in many respects are practically the same, but counsel overlooks the material difference. The sustaining of the demurrer to the answer, counterclaim, and set-off in the former case was not based or predicated upon the facts constituting the cause of action, but entirely and solely, because under section 96, subsections 1 and 2, Civil Code of Practice, such a plea of counterclaim and set-off could not be relied upon, because the judgment of appellant did not grow out of or arise from the action of tort sued on by appellee in that case. In fact, all this court said or adjudicated in that case was, a matter of procedure, that appellant could not plead as a counterclaim or set-off the contract debt it had against appellant, even if the parties who owed the debt were insolvent.

In the case of Louisville & Nashville Railroad Company v. Dry Branch Coal Company, supra, we said:

"The sole question for consideration is the sufficiency of the allegations of the answer setting up the set-off or counterclaim. The cause of action of the Dry Branch Coal Company is one of tort. The set-off or counterclaim asserted did not grow out of, or arise from, the cause of action stated in the petition. Except for the allegation of insolvency, the action of the court in sustaining a demurrer might well be rested upon this ground. Civil Code of Practice, section 96, subsection 1; Duff v. Wilking, 203 Ky. 817, 263 S. W. 373; Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309."

That rule applies to this case. The adjudication did not determine that appellant had no cause of action against appellee as set out in its petition.

In the case of Cox et al. v. Simmerman et al., 256 Ky. 583, 76 S. W. (2d) 635, 636, we said:

"The courts agree that a judgment sustaining a demurrer on the ground that the complaint or petition failed to state cause of action will not sustain a plea of res judicata to a complaint in which the essential allegation lacking in the former complaint is supplied. The former adjudication in such case determines no more than that the pleading, as presented, was insufficient, and not that the plaintiff had no cause of action. See 15 R. C. L. p. 985, et seq. and note in 13 A. L. R. p. 1113, note (d), and Kentucky cases cited under it."

It makes no difference upon what ground the court affirmed the above judgment unless the judgment fixes the rights of the parties. See Pepper v. Donnelly, 87 Ky. 259, 8 S. W. 441, 10 Ky. Law Rep. 140.

The attorneys who represented the Dry Branch Coal Company, in the action in which it obtained its judgment for $500 against appellant, filed an intervening petition in this action asking to be made parties and that they be adjudged a lien on the judgment in the former action to the extent of $250. A demurrer was filed to the intervening petition, but it was never passed upon by the circuit court. The claim of these attorneys is referred to in appellee's brief, but their claim has never been passed upon by the circuit court, nor are they made parties on this appeal. Therefore, there is no action that this court can take in respect to this matter.

Having reached the conclusion that the court committed an error in dismissing appellant's action, and being of the further opinion that appellant is entitled to the relief sought, the remaining contentions relied upon by appellant for reversal need not be considered.

Wherefore, the judgment is reversed with further proceedings consistent with this opinion.

Whole court sitting.