**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ALLSTATE INSURANCE CO.,
Defendant-Appellee.**

**No. 83–5238.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1984.

Decided Feb. 12, 1985.

Wellford, Circuit Judge, filed opinion dissenting in part.

Ronald E. Meredith, U.S. Atty., Michael F. Spalding, Asst. U.S. Atty., Louisville, Ky., Captain Bruce Kasold, Office of the Staff Judge Advocate, JAGC, Major Chris Whittmayer (argued), H–Q–D–A, Washington, D.C., for plaintiff-appellant.

Wayne J. Carroll, John Crutchfield (argued), Ewen, MacKenzie & Peden, Louisville, Ky., for defendant-appellee.

Before MERRITT and WELLFORD, Circuit Judges and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this action involving Kentucky no-fault automobile insurance law, the United States is attempting to recover the cost of medical services it provided to David L. Tangerman, an Army serviceman who was injured when struck by an automobile driven by Charles M. Gee while walking across a street. Tangerman was brought by ambulance to Louisville General Hospital, and was later transferred to Ireland Army Hospital. The United States paid for Tangerman's ambulance services and for his care at Louisville General, and provided treatment at Ireland Army Hospital without charge. It did not obtain an assignment of Tangerman's right to receive indemnification for medical expenses under applicable insurance policies. The total cost to the United States, including the reasonable value of the care provided at Ireland, was $8,620.17.

As an Army Serviceman on active duty status, Tangerman was entitled by 10 U.S.C. § 1074(a) to receive his medical care at government expense.[1] At the time of the accident, however, both Tangerman and Gee had no-fault automobile insurance policies with Allstate Insurance. Their policies had identical personal injury protection (PIP) endorsements which provided for basic reparation benefits, including medical expense. The United States did not seek

---

1. In pertinent part, 10 U.S.C. § 1074(a) provides that "a member of a uniformed service who is on active duty status is entitled to medical and dental care in any facility of any uniformed service." The government apparently interpreted this provision as also requiring it to pay for Tangerman's privately provided care.

an assignment from Tangerman, but filed a claim with Allstate as a third party beneficiary of Gee and Tangerman's insurance contracts.[2] When Allstate refused to honor this claim, the government brought the present action, maintaining that it was entitled to payment from Allstate both by the express language of the PIP medical expense provision, and by the language of the Kentucky no-fault statute, K.R.S. § 304.-39–010 *et seq.* (1981). The District Court entered judgment for Allstate on its motion for a new trial,[3] finding that neither the contract nor the no-fault status gave the government the right to recover benefits from Allstate. We affirm for a number of reasons, including the fact that the government did not obtain an assignment of rights under the Kentucky no-fault statute, § 304.39–240, K.R.S., the method contemplated by statute for recovery by a medical provider.

## I.

The government argues that because it incurred Tangerman's medical expense, it is entitled to payment under Allstate's promise in the PIP endorsement to pay "personal injury protection benefits for medical expense ... incurred with respect to bodily injury sustained by an eligible insured person."[4] It also maintains that as a legal entity or organization which suffered economic loss, it is entitled to receive benefits under K.R.S. § 304.39–030, which states that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits," where basic reparation benefits are defined by sections 304.-39–020(2) and 304.39–020(5)(a) to include medical expense.[5] Neither of these contentions has yet been decided by the Kentucky courts.[6]

█ The District Court held that the government was no more than an incidental beneficiary or optional payee under the PIP endorsement. In order to rise above this status and assert rights as a third party beneficiary under that provision, the

2. The government maintained that coverage should be extended under Gee's policy, since Kentucky Revised Statutes 304.39–050(1) provides that the applicable insurance in auto accidents involving pedestrians is that covering the auto, but also claimed benefits under Tangerman's policy in the event that coverage was not provided under Gee's policy.

3. The District Court initially granted summary judgment for the government on the basis of a medical expense, death and disability provision, but then vacated that judgment and entered judgment for Allstate when Allstate moved for a new trial on the ground that neither Gee nor Tangerman's policy included the medical expense coverage, but only the PIP endorsement.

4. The PIP endorsement reads, in pertinent part, as follows:
Allstate will pay, in accordance with the Kentucky Revised Statutes Chapter 304, Sub Title 29, personal injury protection benefits for
(A) MEDICAL EXPENSE,
(b) WORK LOSS...
incurred with respect to BODILY INJURY sustained by an ELIGIBLE INJURED PERSON and caused by an accident arising out of the operation, maintenance or use of a MOTOR VEHICLE as a vehicle.

5. In pertinent part, § 304.39–020(2) states:

(2) "Basic reparation benefits" mean benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle.... The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one person as the result of one (1) accident shall be ten thousand dollars ($10,000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic reparation benefits consist of one (1) or more of the elements defined as "loss."
Section 304.39–020(5)(a) then defines loss in the following manner:
(5) "Loss" means accrued economic loss consisting only of medical expense, work loss, replacement services loss and, if injury causes death, survivor's economic loss and survivor's replacement services loss. Noneconomic detriment is not loss. However, economic loss is loss although caused by pain and suffering or physical impairment.
(a) "Medical expense" means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care....

6. We certified these questions to the Kentucky Supreme Court, but that court declined to answer them.

United States faces the longstanding rule in Kentucky that for a stranger to recover under a contract to which he is not a party, "it is indispensably essential that he allege and prove that the contract was intended for his benefit in the sense that it embraces the claim asserted by him." *Louisville & Nashville Railroad Co. v. Dry Branch Coal Co.*, 252 Ky. 124, 65 S.W.2d 1008, 1011 (1933), quoted in *King v. National Industries, Inc.*, 512 F.2d 29, 32 (6th Cir. 1975). The contract must be "directly or primarily for the benefit of such third person." *Long v. Reiss*, 290 Ky. 198, 160 S.W.2d 668, 674 (1942). Intent to benefit is determined primarily by looking at the "purpose of the promisee in light of the terms of the promise and the accompanying circumstances." J.D. Calamari & J.M. Perillo, The Law of Contracts, § 17–2, at 608 (2d ed. 1977).

■ The language of the PIP endorsement fails to evidence the requisite intent to benefit a provider such as the government. Allstate promised to pay "personal injury protection benefits" which are clearly for the benefit primarily of the injured insured person. Allstate's general promise to pay PIP benefits for medical expense falls far short of establishing a specific right in the government to recover under the policy. The most natural inference regarding the insured's intent is simply that it was to cover his own medical expenses.

Discerning intent with respect to the no-fault PIP provision is, moreover, complicated by the fact that § 304.39–080(5) requires all Kentucky automobile owners to carry insurance (or meet the self-insurance requirements of § 304.39–080(7)) containing a PIP provision,[6a] and the elements of loss covered in that provision are also statutorily defined and not subject to contractual choice. *See* sections 304.39–020(2) and 304.39–020(5)(a). Against this background, it is impossible to find that the insured

intended the PIP endorsement to be for the direct or primary benefit of the government in its role as a legally obligated provider of medical services.

**II.**

■ The government's more substantial contention is that the no-fault statute itself entitles it to receive payment for medical expenses under the PIP provision. In evaluating this argument we turn first to the language of the statute, which is decisive, if clear. *See Gateway Construction Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky.1962). In addition to the statutory right to basic reparation benefits of "every person suffering loss from injury arising out of maintenance or use of a motor vehicle," § 304.-39–030(1), the government cites § 304.39–040(2), which states that no-fault insurers "shall pay basic reparation benefits ... for loss from injury arising out of maintenance or use of a motor vehicle." Its argument is simply that the United States suffered loss from Tangerman's injury, and is therefore entitled to basic reparation benefits absent statutory language showing the legislature intended a more restrictive reading.

The difficulty with this contention is that under the statutory definition of "injury" in § 304.39–020(4), "loss from injury" means "loss from bodily harm, sickness, disease, or death," whereas the government's expense occurred because it was legally obligated to provide free medical care, and only indirectly from Tangerman's injury. Moreover, while the no-fault statute fails to define "person," the court in *Gregory v. Allstate Insurance Co.*, 618 S.W.2d 582, 582–583 (Ky.Ct.App.1981) held that the word "person" as used in § 304.-39–030(1) refers only to "living human beings." The Commissioner's Comment to § 2 of the Uniform Motor Vehicle Repara-

---

**6a.** Section 304.39–080(5) sets forth the statutory insurance requirement:

[E]very owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the

motor vehicle ... by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits in accordance with this subtitle and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

tions Act (which is identical in this respect to § 304.39–030(1)) similarly states that "all *persons injured in* motor vehicle accidents within this State are entitled to receive basic reparation benefits." (Emphasis supplied.) Uniform Motor Vehicle Reparations Act (U.L.A.) § 2, at 59 (1980). The Kentucky Supreme Court has recognized the commissioner's comments as "persuasive authority" in interpreting Kentucky statutes. *Couty v. Kentucky Farm Bureau Mutual Insurance Co.*, 608 S.W.2d 370, 371 (Ky.1980). See also Note, *Kentucky No-Fault: An Analysis and Interpretation*, 65 Ky.L.J. 466, 475 (1976) (the basic assumption of the statute is that "everyone sustaining personal injuries in an automobile accident in Kentucky will be entitled to basic reparation benefits").[6b]

■ The government also argues that the purpose of the no-fault statute requires allowing any person legally obligated to pay the medical expenses of an insured person to claim benefits directly and on his own behalf from the no-fault insurer. We find this contention inconsistent with the language and policy of the statute. In section 304.39–240, the Kentucky legislature specifically made enforceable an assignment of a right to benefits for "medical expense to the extent the benefits are for the cost of products, services, or accommodations provided or to be provided by the assignee." It thus clearly contemplated that a provider's right to recover should arise only from assignment. In addition, in providing that "medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant," section 304.39–210 makes the provider an

optional payee or incidental beneficiary of no-fault policies in order to facilitate the insured person's receipt of benefits, and does not make the provider a third party beneficiary with a right to enforce the insurance contract. *Accord, Heusle v. National Mutual Insurance Co.*, 628 F.2d 833, 839 (3rd Cir.1980); *United States v. Dairyland Insurance Co.*, 674 F.2d 750, 752 (8th Cir.1982).

The stated purposes of the Kentucky no-fault statute might be frustrated and are not furthered by granting the government a right to recover. Since the United States is legally obligated to cover the medical expenses of servicemen, its payment of those expenses should not be influenced by its ability to recover from the no-fault insurer. Thus the § 304.39–010(3) goal of encouraging "prompt medical treatment and rehabilitation of the accident victim by providing prompt payment of needed medical care," does not support the government's claim.

Even more importantly, an expansive view of the class of third party beneficiaries to no-fault PIP coverage could undermine the primary compensatory purpose of no-fault automobile insurance. Like the Uniform Motor Vehicle Reparations Act (the model no-fault law), the Kentucky statute allows the automobile accident victim to receive compensation for net loss, including medical expenses and work loss, directly from his own insurance company. However, in exchange for this direct right of recovery, the Kentucky automobile owner must agree to the abolition of any tort rights "to the extent that basic reparation benefits are payable," *see* § 304.39–060(1)(2),[7] and, in accordance with § 304.-

---

**6b.** The District Court similarly found that only those persons who are injured or survivors may claim basic reparation benefits, including medical expense, not all those "suffering loss from injury."

**7.** As relevant, § 304.39–060 provides:

(1) Any person who registers, operates, maintains or uses a motor vehicle on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor vehicle and

use of the public roadways, be deemed to have accepted the provisions of this subtitle, and in particular those provisions which are contained in this section.

(2)(a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefore. . . .

39–020(2), to the limitation of basic reparation benefits to not more than $10,000 per individual per accident. No-fault thus ensures direct and speedy compensation, but the amount of compensation awarded under the no-fault system is limited and hence exhaustible. *See generally* R.E. KEETON & J. O'CONNELL, BASIC PROTECTION FOR THE TRAFFIC VICTIM, 274–76 (1965) (classic study setting forth the principles and structure of no-fault law). Given the exhaustible nature of no-fault benefits, we cannot accept the government's position that any person legally obligated to provide medical services should be allowed to claim under the no-fault system, since this enlargement in the class of beneficiaries could frustrate the legislature's stated intention of "providing prompt payment to victims of motor vehicle accidents," K.R.S. § 304.39–010(2), by creating competing claims to basic reparation benefits.

Our conclusion parallels that reached by the court in *United States v. Dairyland Insurance Co.*, 674 F.2d 750, 754 (8th Cir. 1982), where the court held that a provision in the North Dakota no-fault statute stating that the no-fault insurer was obligated to pay basic no-fault benefits for "economic loss resulting from (1) accidental bodily injury" did not entitle the government to recover benefits and in fact had nothing to do with the question of which parties could recover benefits, but instead described the types of claims which were payable.[7a] We find ourselves in conflict with the Second Circuit's decision in *United States v. Government Employees Insurance Co.*, 605 F.2d 669 (2d Cir.1979), but we cannot accept its argument, *see* 605 F.2d at 671, that general statutory language entitling persons suffering loss on account of personal auto injury to no-fault benefits was intended to give any third party who incurs medical expenses the right to recover benefits on his own behalf. There is simply nothing in the language or policy of the Kentucky no-fault statute to suggest that such a radical result was intended by the legislature.[8]

■ We recognize that Allstate will in a certain sense realize a windfall, in that both Gee and Tangerman paid premiums for PIP coverage and yet Allstate escapes what would ordinarily be its clear obligation to pay. On the other hand, allowing recovery by the government would make it the beneficiary of insurance protection for which it did not pay, and would notify no-fault insurers that servicemen present the risk of substantial medical expense payments even though they ostensibly receive free care from the government. As a matter of Kentucky state law, an action to recover no-fault benefits is an action on an insurance contract, *France v. Kentucky Farm Bureau Mutual Insurance Co.*, 605 S.W.2d 773, 774 (Ky.Ct.App.1980), and we cannot extend the class of beneficiaries entitled to bring such an action merely because the insurance company may reap a windfall if we do not.

Accordingly, the judgment of the District Court is affirmed.

WELLFORD, Circuit Judge, dissenting in part:

I agree with the majority that the government should not be entitled to recover as a third party beneficiary of the insurance contract. However, I cannot agree that the government should not be allowed reimbursement under the Kentucky no-fault statute.

---

**7a.** The *Dairyland* decision rested also on a provision in the North Dakota statute limiting recovery to loss "sustained by an injured person or his dependent survivors or incurred on his behalf by his spouse, relatives, or guardian." While this sort of provision is not found in the Kentucky statute, we think that the policy it expresses is that which the Kentucky legislature intended.

**8.** The government suggests that denying it a right to recover benefits necessarily implies that a parent will be unable to recover the cost of her child's care. This issue is not before us for decision, and we note also that state law generally provides for the direct right of parents to recover on behalf of their children. *See, e.g., Atlanta Casualty Co. v. Jones*, 247 Ga. 238, 275 S.E.2d 328, 330 (1981) (allowing a parent to recover her child's medical expenses under a no-fault automobile policy).

In *United States v. Government Employees Ins. Co.*, 605 F.2d 669 (2d Cir.1979), the Second Circuit held that under the New York no-fault statute, the government could recover from an insurer medical expenses paid out for a serviceman's injuries. The relevant language of that statutory scheme was explained as follows:

Section 672(1)(a) of New York's no-fault law provides, in part, that every no-fault insurance policy should provide for the payment of certain statutory benefits to *"persons*, other than occupants of another motor vehicle or a motorcycle, for loss arising out of the use or occupation in [New York] of [the insured] motor vehicle...."

*Id.* at 670 (emphasis added and brackets original) (quoting N.Y.Ins.Law § 672(1)(a) (McKinney Supp.1978)). The court concluded that the term "persons" was not limited to living beings, and thus the government could not be precluded from recovery on this ground.

The court next decided that the government could recover despite the absence of physical injury to itself. Under the New York statutory scheme, the benefits to be paid out are essentially defined as including "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle." 605 F.2d at 671 (quoting N.Y.Ins.Law § 671(2)). This definition, the court found, was not limited to payments made solely because of personal physical injury.

The broad language of section 672(1)(a) suggest [sic] that a third party claimant who incurs the medical costs of an accident victim may recover those expenses under this section.

605 F.2d at 671. Thus, the government's payments for a serviceman's injuries were found not to be excluded, and could be recovered.

It is important to note in considering the above rationale that Kentucky's no-fault statute is similar to that of New York, and is subject to much the same analysis. Kentucky grants the relevant right to benefits in Ky.Rev.Stat.Ann. § 304.39–030(1) (Michie 1981):

If the accident causing injury occurs in this Commonwealth *every person* suffering *loss from injury* arising out of maintenance or use of a motor vehicle has a right to *basic reparation benefits,....*

(Emphasis added). "Injury" is defined as meaning "bodily harm, sickness, disease, or death." Ky.Rev.Stat.Ann. § 304.39–020(4). "Loss," in turn, is defined as being "accrued economic loss consisting only of medical expense, work loss, replacement service loss; and, if injury .causes death, survivor's economic loss and survivor's replacement services loss." Ky.Rev.Stat. Ann. § 304.39–020(5). Thus, in sum, "loss from injury" is economic loss resulting from bodily harm, sickness, disease or death ("physical injury"). There can be no doubt that the government, by paying for the serviceman's medical care,[1] has suffered economic loss by reason of a physical injury suffered by the serviceman.

The fact that the physical injury resulting in the loss was not inflicted directly upon the government itself does not defeat the government's claim. As was the case in *Government Employees*, the no-fault statute nowhere requires that the person physically injured be the same "person" suffering the economic loss. In fact, section 304.39–020(5) (defining loss) expressly includes the economic loss borne by a survivor, one not personally physically injured. Any argument that the party bearing the economic loss must also be the person

---

**1.** I take note of the reference in note 1 of the majority opinion to 10 U.S.C. § 1074(a). I have difficulty, however, with the government's apparent interpretation that § 1074(a) *requires* it to pay for "privately provided care." I accordingly have doubt, as set out by the majority in Part II of its opinion, that the government "was legally obligated to provide free medical care" if it is referring to care at Louisville General Hospital, a private hospital, where Tangerman was treated.

physically injured is thus patently inconsistent with the statutory language.[2]

The last question that must be answered is whether the government qualifies as a "person" for purposes of Kentucky's no-fault statute. "Person" is not defined in the Act. Section 304.39–030(1), however, purports to encompass *"every* person." First, consistent with the immediately preceding discussion, this choice of language would seem to indicate clearly that all parties suffering economic loss, even those not personally physically injured, receive compensation. Second, the legislature, in another context, limited specifically those who could receive compensation; where the accident occurs out-of-state, only

> the *following persons* ... suffering loss from injury ... have a right to basic reparation benefits:
> (a) Basic reparation insureds; and
> (b) The driver and other occupants of a secured vehicle....

Ky.Rev.Stat.Ann. § 304.39–030(2) (emphasis added). "Basic reparation insureds" are defined as those persons named on the insurance contract and the family members of those named persons. Ky.Rev.Stat.Ann. § 304.39–020(3). Thus, where the accident occurs out-of-state, only a select group of persons may recover reparation benefits. Where the accident occurs in-state, as here, "every person" who otherwise qualifies may recover. The coverage of section 304.-39–030(1) (applying to in-state accidents) is broader than the coverage provided by section 304.39–030(2) (applying to out-of-state accidents). I find it logical, therefore, to infer that the class of "every person" was intended to include entities other than living beings.[3] *See Government Employees,* 605 F.2d at 671.

Accordingly, the government qualifies as a "person" entitled to reparation benefits.

This analysis is consistent with the no-fault statute policy of spreading liability among a large class of individuals, and is also consistent with the policy of compensating promptly those who have suffered economic loss. Further, such an interpretation will in no way influence the government's decision whether to pay, or not to pay, injured servicemen. Indeed, the fact that the government might be reimbursed would only encourage prompt payment and could only enhance prompt reparation for needed medical care for those injured.

The equities in this case clearly weigh in favor of the government. Should the government not be able to recover, the insurer experiences a two-fold windfall. First, it is relieved of paying that which it would otherwise have been required to pay had there been no third-party payment. Second, the insurer keeps premiums paid not only by the injured serviceman, but also those paid by the driver of the automobile, and the government is forced to bear a burden which should rightfully fall on the insurer.

In *United States v. Dairyland Ins. Co.,* 674 F.2d 750 (8th Cir.1982), after interpreting the North Dakota no-fault statute, the court concluded that the government was not entitled to reimbursement for expenses paid for a serviceman's medical needs. In that case, however, recovery was limited to loss "sustained by an injured person 'or his dependent survivors or incurred on his behalf by his spouse, relatives, or guardian.'" *Id.* at 753 (quoting N.D.Cent.Code § 26–41–09). That language is more restrictive than that of the Kentucky statute previously analyzed ("every person").

Similarly, in *Heusle v. National Mutual Ins. Co.,* 628 F.2d 833, 839 (3d Cir.1980),

---

**2.** As set out in section 304.39–030(1), a person suffering economic loss by reason of physical injury is entitled to "basic reparation benefits." These benefits are defined as "benefits providing reimbursement for net loss suffered through injury...." Ky.Rev.Stat.Ann. § 304.39–020(2). This language is consistent with the conclusion that the government has suffered 'loss from injury.'

**3.** *Gregory v. Allstate Insurance Co.,* 618 S.W.2d 582 (Ky.Ct.App.1981), does not require a different result. That case dealt with whether a decedent's estate could recover for "work loss" under the no-fault statute. The court concluded it could not, relying heavily on the fact that an estate is not a "survivor," and also relying on its interpretation of "work loss." These statutory terms are not implicated in the present case.

the Pennsylvania no-fault statute included a provision expressly relieving the insurer of liability for amounts paid by "any government." *See* Pa.Stat.Ann. tit. 40, § 1009.206(a) (Purdon Supp.1980). The Kentucky no-fault law contains no such provision. *Heusle* is therefore inapplicable to the facts of this case.

For these reasons I respectfully dissent; I would reverse the judgment of the district court, and render judgment for the government.