**UNITED STATES FIDELITY & GUARANTY CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 88–C–0990–S.

United States District Court, D. Utah, C.D.

July 14, 1989.

Steven K. Walkenhorst, Morgan, Scalley & Reading, Salt Lake City, for plaintiff.

Richard D. Parry, Asst. U.S. Atty., Salt Lake City, for defendant.

## MEMORANDUM DECISION

SAM, District Judge.

This matter came before the court on March 27, 1989 for hearing on defendant's motion for summary judgment or dismissal. Although the court stated its position from the bench, the court indicated a supplemental written decision would follow. The court now supplements its bench ruling with the following memorandum decision.

### BRIEF STATEMENT OF THE CASE

For purposes of defendant's motion, the facts are not in dispute. On December 2, 1986 in Salt Lake City, a federal employee, while in the scope of employment, negligently operated a vehicle causing a collision with another vehicle and injuring its driver. The injured driver was insured by plaintiff United States Fidelity and Guaranty Company (USF & G), which now seeks to recover from the federal government the first $3,000 of medical benefits paid by USF & G to its insured pursuant to "personal injury protection" (PIP) in the insurance policy. The federal government contends it is not liable to an insurer for a claim in Utah to recover PIP benefits in an amount not exceeding $3,000.00.

The issue here is whether the federal government, under the Federal Tort Claims Act, has waived immunity to allow an injured party's insurer to sue in Utah to recover PIP benefits. The federal government asserts that 28 U.S.C. § 1346(b) and 28 U.S.C. § 2674 waive immunity for personal injury claims only to the extent a private individual under like circumstances would be liable under state law. The federal government contends that an insurance company, under Utah law, may not recover PIP benefits from a private individual who may have caused an auto accident, and therefore USF & G may not recover against the federal government under the Federal Tort Claims Act. The federal government relies on *Allstate v. Ivie*, 606 P.2d 1197 (Utah 1980) (an insured tort-feasor is not personally liable for no-fault insurance benefits paid by an insurer); and, *Laub v. South Central Utah Telephone Assoc.*, 657 P.2d 1304 (Utah 1982) (an insured tort-feasor is not liable for reimbursement of PIP benefits to either the injured party or his no-fault insurer).

USF & G argues that Utah's no-fault insurance law does not apply to vehicles owned or operated by the federal government. USF & G contends Utah law provides a partial tort immunity to persons who maintain owner's or operator's security under Utah law. Utah Code Ann. § 41–12a–301(4) (1953, as amended), recognizes certain insurance options available to the federal government. USF & G argues the federal government must maintain one of the "recognized" options of owner's or operator's security to be entitled to the no-fault immunity provided by Utah law. Since the federal government is self-insured, which is not one of the options, USF & G contends the federal government is not entitled to immunity.

USF & G further argues that, if the government's security is recognized, the federal government should be treated as an insurer which can be sued rather than a private individual who cannot. USF & G contends Utah Code Ann. § 31A–22–309(6), (1953, as amended) evidences legislative intent to preserve subrogation rights among insurers. Since the federal government is self-insured, the federal government should be treated as other insurers.

## ANALYSIS

Sovereign immunity prevents the federal government from being sued without its consent. *See Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, *reh. denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972). In 1946, Congress enacted the Federal Tort Claims Act which defines the conditions under which the United States consents to suit for the torts of its employees acting in the scope of their employment. 28 U.S.C. § 2674 sets forth the limited waiver of immunity in pertinent part as follows:

> The United States shall be liable … in the same manner and to the same extent *as a private individual under like circumstances…* [Emphasis added.]

28 U.S.C. § 1346(b) grants the federal district courts jurisdiction to hear claims "… for … personal injury … caused by the negligent or wrongful act or omission of any employee of the Government … under circumstances where the United States *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." [Emphasis added.]

█ The court must give these provisions their plain meaning. *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); and, *Raynier v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). Similarly, judicial restraint constrains the court to avoid creative interpretation of federal or state law which would expand the scope of the waiver without Congressional authorization. The federal waiver, not state law, is the overriding consideration. More specifically, under the previously quoted law, the extent of the waiver may not be measured solely by the manner in which the state legislature addresses the federal government in its no-fault insurance plan. Rather, the extent of the federal waiver is measured by assessment of how Utah law

would treat "a private individual in like circumstances." *Cf. Ewell v. United States,* 579 F.Supp. 1291 (D. Utah 1984) (applying the Utah Limitation of Landowner Liability Act to the federal government in the same way it would apply to private persons).

Thus, the court focuses on the elusive fiction of how a private individual under like circumstances would be treated in Utah. The circumstances need only be similar, not identical. 28 U.S.C. § 2674.

■ Applying this standard, the argument that Utah's no-fault law does not apply to vehicles owned or operated by the federal government is not persuasive. USF & G would have the court treat the federal government as if adequate security were not in place because the federal government did not select the optional security set forth in Utah Code Ann. § 41–12a–301(4) (1953, as amended). It provides,

(4) The United States or any political subdivision of it, or any of its agencies, *may maintain owner's or operator's security* in effect in respect to their motor vehicles. Utah Code Ann. 41–12a–301(4) (1953 as amended). (emphasis added)

§ 41–12a–103(9) (1953, as amended) defines owner's or operator's security:

9) "owner's or operator's security," "owner's security," or "operator's security" means any of the following:

(a) an insurance policy or combination of policies conforming to § 31A–22–302 which is issued by an insurer authorized to do business in Utah;

(b) a surety bond issued by an insurer authorized to do a surety business in Utah in which the surety is subject to the minimum coverage limits and other requirements of policies conforming to § 31A–22–302, which names the department as a creditor under the bond for the use of persons entitled to the proceeds of the bond;

(c) a deposit with the state treasurer of case or securities complying with § 42–12a–406;

(d) maintaining a certificate of self-funded coverage under § 41–12a–407.

Acceptance of USF & G's argument is tantamount to finding that the federal government is in like circumstances to an uninsured, as opposed to an insured, owner or operator of a vehicle. Such a finding would conflict with reality without furthering the purposes of Utah no-fault law. Because the federal government provides its employees with financial security at least equivalent to that required by Utah law,[1] the federal government is in similar circumstances to a "secured" owner or operator of a vehicle despite the fact the federal government did not select one of the options described in § 41–12a–103(9). The court notes Utah law does not attempt to require the federal government to maintain one of the enumerated forms of security.[2] Utah Code Ann. § 41–12a–301(4) (1953, as amended) states the United States "may maintain owner's or operator's security." The federal government therefore is not an owner or operator required to have security under Utah Code Ann. § 41–12a–304 (1953, as amended) which provides:

The owner of a motor vehicle on which owner's or operator's security *is required* under Section 41–12a–3–1 *who fails to have the security in effect* at the time of an accident *does not have immunity from tort liability* under Subsection 31A–22–309(1). This owner is personally liable for the payment of the benefits provided for under Section 31A–22–307 *to persons entitled to receive them* under Section 31A–22–308. [Emphasis added.]

The court now turns to the question of whether an injured party's insurer has a claim for recovery of PIP benefits against a secured owner or operator of a vehicle. Utah statutes and caselaw indicate the in-

---

**1.** The Federal Employees Compensation Act obligates the federal government to provide unlimited coverage of its employee's medical bills and wage loss.

**2.** This point does not necessarily assist the court to understand how a private individual in like circumstances is treated under Utah law.

surer does not. *Laub v. South Central Utah Telephone Association,* 657 P.2d 1304 (Utah 1982) and *Allstate v. Ivie,* 606 P.2d 1197 (Utah 1980) hold that an insurer does not have a tort claim against a private person to recover PIP benefits. In reaching this result the Utah Supreme Court relies, in part, on the language now found in Utah Code Ann. § 31A–22–309(1), (1953, as amended):

> No person who has direct benefit coverage under a policy which includes personal injury protection may maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident except where the person has sustained one or more of the following:
> (a) death;
> (b) dismemberment;
> (c) permanent disability;
> (d) permanent disfigurement; or
> (e) medical expenses to a person in excess of $3,000.

Accordingly, PIP benefits up to the amount of $3,000 which are paid to an injured person without regard to fault are generally not recoverable from an insured tort-feasor by either the injured party or his insurer. Thus, the Federal Tort Claims Act does not waive sovereign immunity to allow recovery against the United States, as the tort-feasor's employer.

Finally, USF & G argues that the federal government, being self-insured, is in similar circumstances to a tort-feasor's insurance company and therefor subject to inter-company reimbursement under Utah Code Ann. § 31A–22–309(6) (1953, as amended) which provides as follows:

> (6) Every policy providing personal injury protection coverage shall provide:
> (a) that where the insured under the policy is or would be held legally liable for the personal injuries sustained by any person to whom benefits required under personal injury protection have been paid by another insurer, including the Workers' Compensation Fund of Utah, the insurer of the person who would be held legally liable shall reimburse the other insurer for the payment, but not in excess of the amount of damages recoverable; and
> (b) that the issue of liability for that reimbursement and its amount shall be decided by mandatory, binding arbitration between the insurers

However, the issue of whether Utah law would allow USF & G's claim against a private individual's insurer is outside the purview of the plain meaning of the Federal Tort Claims Act waiver of immunity. Sovereign immunity is waived in the Federal Tort Claims Act to the extent a private individual in similar circumstances would be liable and not to the extent a private individual's insurer would be. Analysis of the nature of the inter-company claim in § 31A–22–309(6) is illustrative. Although the federal government may be an insurer, the inter-company claim is not a tort claim nor can it be asserted against a private individual as contemplated in 28 U.S.C. § 2674 and 28 U.S.C. § 1346(b). The inter-company claim for reimbursement of PIP benefits is a statutory and contractual remedy not based on personal tort liability. The Utah Supreme Court in *Allstate v. Ivie,* 606 P.2d 1197, 1202–03 (1980) denied a subrogation claim for recovery of PIP benefits reasoning as follows:

> Under the Utah No–Fault Insurance Act, the tort-feasor who has the required security, is not personally liable to the injured person for payment of Section 6 benefits, Section 9(2); therefore, the tort-feasor has no personal legal obligation to reimburse the insured party's insurer. On the other hand, the tort-feasor's liability insurer, in fulfilling its duty to respond to the claims of the injured party to the limits of its policy, stands in the shoes of its insured and pays on the basis of its insured's personal liability to the tort victim; this personal liability does not include PIP payments. Thus, the tort victim's recovery from the liability insurer cannot be reduced by the PIP payments. If the victim's recovery be reduced by the amount of the PIP payments by granting his no-fault insurer a right of subrogation, it is the no-fault insurer who receives double recovery.

This is so because the insurer receives a premium for the benefits, and then receives full reimbursement, while the liability insurance available to recompense the victim is depleted by payments for which the liability insurer is not responsible to the victim.

The Utah Supreme Court in *Laub v. South Central Utah Telephone Association*, 657 P.2d 1304, 1308–09 (Utah 1982) also recognized,

[A] tortfeasor who has the required security is liable neither to the injured party nor to the no-fault insurer for reimbursement of PIP payments; therefore, the plaintiff's prayer should not include the damages compensated by the PIP payments. Since the no-fault insured should receive no funds on behalf of the no-fault insurer, the insurer has no right of subrogation as to funds obtained by the insured through either settlement with or judgment against the tortfeasor. The no-fault insurer's only right of reimbursement through subrogation is against the liability insurer in an arbitration proceeding.

For reasons discussed in *Liberty Mutual Co. v. United States*, 490 F.Supp. 328 (E.D.N.Y.1980), the United States cannot be subjected to mandatory arbitration under Utah Code Ann. § 31A–22–309(6). The following reasoning from *Liberty Mutual* applies:

Even if the United States could be characterized as an insurer within the above definition, *Liberty Mutual* would still be without a remedy against the United States in the instance case. It is clear that the United States could not be made subject to the mandatory arbitration procedure specified in § 674, because it would conflict with the administrative arrangement established in the Federal Tort Claims Act. See 28 U.S.C. §§ 2401(b) and 2675(a), and fn. 2 *supra*. With a circularity so typical of the law, the Tort Claims Act thus waives the immunity of the United States on the substantive side while simultaneously preempting the applicable State law on the procedural side.

*Id.* at 334, fn. 9.

Accordingly, the court rejects USF & G's argument that the United States should be treated as the tort-feasor's insurer for purposes of recovering PIP benefits. Defendant's motion for summary judgment is granted.