NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 92–1069.

United States Court of Appeals, Tenth Circuit.

Aug. 31, 1993.

Fred P. Phillip, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC

---

* The Honorable Timothy D. Leonard, District Judge, United States District Court for the West-

(Stuart M. Gerson, Asst. Atty. Gen., Michael J. Norton, U.S. Atty., and Mark B. Stern, Appellate Staff, Civ. Div., U.S. Dept. of Justice, on the brief), for defendant-appellant.

Gregory Hilgers, Arvada, CO, for plaintiff-appellee.

Before McKAY, Chief Judge, EBEL, Circuit Judge, and LEONARD, District Judge.*

EBEL, Circuit Judge.

This case requires us to determine whether Nationwide Mutual Insurance Company ("Nationwide") may recover in subrogation from the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., for benefits paid by Nationwide to its insured, Laura Mesch, who was injured in a motor vehicle collision resulting from the negligent operation of a United States Postal Service vehicle.

Applying the FTCA in conjunction with the Colorado Auto Accident Reparations Act ("CAARA"), C.R.S. § 10–4–701 et seq., we conclude that even though the United States was self-insured it should be considered in "like circumstances" to a private party who had obtained Colorado no-fault insurance through a Colorado licensed insurance company. Accordingly, we reverse the district court's grant of summary judgment in favor of Nationwide, which held that the United States was not entitled to the immunities provided in the CAARA because it did not possess insurance through a Colorado licensed company. We remand for further proceedings on the remaining issues.

## FACTS

The facts are not in dispute. On May 28, 1988, Laura Mesch was involved in an automobile collision in Colorado with a United States Postal vehicle driven by Morris Olivas. The United States has conceded that Olivas negligently caused the accident while acting within the scope of his employment.

ern District of Oklahoma, sitting by designation.

At the time of the accident, the United States was self-insured, providing benefits to its own employees under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq.[1], and accepting liability to third parties injured by certain wrongful acts of its employees under the FTCA. Mesch was insured under a collision and personal injury protection ("PIP") policy issued by Nationwide. In accordance with this policy, Nationwide paid PIP benefits to, or on behalf of, Mesch in the amount of $25,-857.38 as a result of the injuries suffered by Mesch in the accident. Pursuant to its right of subrogation, Nationwide then filed an administrative claim against the Postal Service to recover these benefit payments. The Postal Service denied Nationwide's claim on the ground that it was barred by the CAARA.[2]

Nationwide subsequently brought suit against the United States under the FTCA in the United States District Court for the District of Colorado. The United States moved for dismissal of the suit or in the alternative for summary judgment, reasserting its position that Nationwide's claim for recovery of its payments to Mesch was barred by the CAARA. The district court denied the United States' motion and subsequently granted summary judgment for Nationwide. The district court assumed, without deciding, that the United States possessed equivalent coverage to that required by the CAARA and was therefore entitled, under § 10–4–715(1)(a), to claim all the liabilities and benefits conferred by the CAARA. The court nevertheless concluded that the United States was liable to a subrogation claim by Nationwide because it did not possess insurance from a Colorado licensed insurer as required by § 10–4–713(1). Section 10–4–713(1) allows an insurance company that pays benefits to an accident victim to sue the tortfeasor under a subrogation theory if the tortfeasor is not "insured under a policy of automobile liability insurance" in Colorado. C.R.S. § 10–4–713(1). The United States now appeals, arguing that the district court erred in denying its motion for summary judgment and granting summary judgment to Nationwide.

## DISCUSSION

■ An appellate court reviews the grant or denial of summary judgment de novo. *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). The court applies the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c). *Id.* Rule 56(c) permits summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In analyzing whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the non-moving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991).

Under the FTCA, the United States is liable for tort claims "in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b). In the instant case, the automobile accident occurred in the State of Colorado. Thus, the United States' liability to Nationwide must be determined by reference to Colorado law.

In Colorado, the CAARA governs the legal rights of accident victims and their insurers. The CAARA is a no-fault statute designed to "avoid inadequate compensation to victims of automobile accidents." C.R.S. § 10–4–702. To accomplish this objective, the CAARA requires every owner of a motor vehicle operated and registered in Colorado to be insured by "a complying policy." C.R.S. § 10–4–705. A complying policy is a policy "approved by the commissioner [of insurance], which provides the coverages and is subject to the terms and conditions required by [the CAARA.]" C.R.S. § 10–4–703(2). The coverages required by the CAARA are enumerated in C.R.S. § 10–4–706.

---

1. The FECA provides unlimited compensation for medical bills and wage loss. *United States Fidelity & Guar. Co.,* 728 F.Supp. 651, 654 n. 1 (D.Utah 1989).

2. The Postal Service did negotiate a settlement with Mesch. The record does not reveal the nature or details of this settlement.

As part of its no-fault scheme, the CAARA significantly curtails tort actions and recoveries. Section 10–4–714 precludes a person entitled to receive PIP benefits from seeking damages for bodily injury against the tortfeasor or anyone legally responsible for the tortfeasor, unless the victim's injuries resulted in death, dismemberment, permanent disability or disfigurement, medical and rehabilitative expenses greater than $2500, or economic losses in excess of the minimum PIP coverages. C.R.S. § 10–4–714(1).

More importantly for purposes of this appeal, § 10–4–713 precludes an individual or insurer from recovering against the tortfeasor or anyone legally responsible for the tortfeasor for those PIP benefits required to be paid under the CAARA. C.R.S. § 10–4–713(1). An exception to this limitation on the right of insurers to recover PIP benefits by subrogation against the tortfeasor exists when the tortfeasor "is not an insured under a policy of automobile liability insurance issued by an insurer licensed to write automobile insurance in [Colorado]." Id.[3]

Certain vehicles are explicitly exempted from the requirements of the CAARA, including vehicles owned by the United States. C.R.S. § 10–4–703(7); C.R.S. § 42–3–103(3).

Section 10–4–715 provides that "nothing in [the CAARA] shall be construed to limit the right" of either victims or direct providers to maintain damage actions against tortfeasors not covered by the CAARA unless the tortfeasors have "coverage equivalent to that required under § 10–4–706." C.R.S. § 10–4–715(1)(a).[4]

■ The United States contends that, in light of the CAARA, Nationwide is precluded from recovering any of the PIP benefits Nationwide paid to Mesch. The United States argues that, as a matter of federal law under the Federal Tort Claims Act, it qualifies for immunity from suit under C.R.S. § 10–4–713(1) because it must be analogized to a private individual possessing an insurance policy issued by a Colorado licensed insurer. We agree that the United States should not be disqualified from claiming immunity under § 10–4–713(1) merely because it was self-insured rather than insured through a Colorado licensed insurance company. We remand, however, for a determination of whether the United States provided "equivalent" insurance coverage as required by § 10–4–715(1)(a) before CAARA immunity may be invoked.[5]

---

**3.** C.R.S. § 10–4–713(1) provides:

Neither any person eligible for direct benefits described in section 10–4–706 nor any insurer providing benefits described in section 10–4–706 shall have any right to recover against an owner, user, or operator of a motor vehicle or against any person or organization legally responsible for the acts or omissions of such person in any action for damages for benefits required to be paid under section 10–4–706, regardless of any deductible option, waiting period, or percentage limitation; except that an insurer paying benefits under section 10–4–706 to or for any one person for whose injuries legal liability exists or may exist on the part of a third person who is not an insured under a policy of automobile liability insurance issued by an insurer licensed to write automobile liability insurance in this state shall have a direct cause of action against an alleged tortfeasor to only the extent of the alleged tortfeasor's insurance coverage in excess of reasonable compensation paid to the injured person for such person's injury or damage by the alleged tort-feasor's insurer when the injured person could recover in tort pursuant to section 10–4–714.

**4.** C.R.S. § 10–4–715(1)(a) provides:

Nothing in this part 7 shall be construed to limit the right to maintain an action in tort by either a provider of direct benefits under section 10–4–706 or by a person who has been injured or damaged as a result of an automobile accident against an alleged tortfeasor where such alleged tortfeasor was ... [u]sing or operating a motor vehicle not required to be covered under the provisions of this part 7, unless coverage equivalent to that required under section 10–4–706 was, at the time of occurrence of the alleged tortious conduct, actually provided for the benefit of persons for whom benefits are provided under section 10–4–707.

**5.** The United States argues that it is exempt from liability under § 10–4–713(1) by the express language of § 10–4–715(1), regardless of its compliance with § 10–4–713(1). We disagree. Section 10–4–715(1)(a) states only that a tortfeasor who is not covered by the CAARA may claim the benefits and burdens of this statutory scheme if the tortfeasor possesses coverage equivalent to that required by § 10–4–706. Accordingly, for the United States to be entitled to the benefits of § 10–4–713(1), it is a necessary but not sufficient condition that it first satisfy the requirements of § 10–4–715(1). To claim the specific immunity benefits of § 10–4–713(1), the United States must

In the instant case, it is undisputed that the United States was not insured by a Colorado licensed insurer at the time of the accident. Accordingly, § 10–4–713(1), by its literal terms, does not immunize the United States from liability to Nationwide for the PIP benefits Nationwide paid to Mesch. This conclusion does not end the inquiry, however.

The FTCA provides that the United States shall be liable under state tort law only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Accordingly, whether the United States is entitled to immunity under § 10–4–713(1) depends on whether a private person in "like circumstances" would be entitled to claim such immunity.

In *Griffin v. United States*, 644 F.2d 846 (10th Cir.1981), we held that the United States was entitled to invoke the exclusive remedy provision of the Kansas Workmen's Compensation Act as a defense to a negligence suit brought by an employee of a United States' contractor, even though the United States was not subject to the requirements of the Act. We reasoned that because the United States had nevertheless indirectly complied with the terms of the Act by requiring its contractor to provide workmen's compensation insurance, the United States was similarly situated to a private party who was actually subject to the requirements of the Act. Accordingly, we concluded that "the purposes of both the FTCA and the Kansas Workmen's Compensation Act are satisfied by allowing the United States to assert the exclusive remedy provision as a defense." *Id.*, 644 F.2d at 848.

The instant case presents a somewhat more difficult situation than that which we faced in *Griffin*. Here, as in *Griffin*, the United States is not subject to the state statute under which it seeks immunity. However, in contrast to *Griffin*, where the United States essentially complied with the terms of the Kansas Workmen's Compensa-

tion Act, the United States in the instant case chose not to comply with the terms of § 10–4–713(1) of the CAARA. Notwithstanding this distinction between *Griffin* and the instant case, we conclude that the United States is in "like circumstances" with a private party entitled to claim immunity under § 10–4–713(1).

■ The "like circumstances" inquiry is designed to prevent state legislatures from using the United States' waiver of sovereign immunity under the FTCA as an occasion to "enrich their own citizens at the expense of the deepest pocket." *Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir.1992). This goal is accomplished by requiring the United States' liability to be measured by reference to the liability of private parties. Recognizing that the United States is seldom situated identically to private parties, however, the "like circumstances" inquiry requires only that the United States be analogized to a similarly situated private party. *Indian Towing Co. v. United States*, 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955); *Carter*, 982 F.2d at 1144. "Nice pieces of casuistry and hypersensitive legalisms are [to be] avoided" in interpreting this language. *Roelofs v. United States*, 501 F.2d 87, 92 (5th Cir.1974), *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975).

■ In light of these principles, and the fact that the Supremacy Clause of Article VI of the U.S. Constitution precludes Colorado from requiring the United States to maintain insurance with a Colorado licensed insurer (a fact Colorado itself recognizes), it seems to us that so long as the United States provides protection that is equivalent to that which Colorado can and does require of private parties, the United States should be able to take advantage of the immunity that Colorado law offers to private parties. Accordingly, since the United States functionally complied with the requirements of § 10–4–713(1) by maintaining a financially responsible system of self-insurance, we conclude that the

then also satisfy the requirements imposed by that provision.

Ultimately, we conclude on the basis of the FTCA that the United States did satisfy the requirements of § 10–4–713(1). Because the dis-

trict court did not address whether the United States satisfied the requirements of § 10–4–715(1), however, we remand the case to the district court for further proceedings.

United States was in "like circumstances" to a private individual who actually procured insurance from a Colorado licensed insurer.

The avowed purpose of the CAARA is to avoid inadequate compensation to victims of accidents. C.R.S. § 10–4–702. Section 10–4–713(1) promotes this goal by encouraging motorists to obtain insurance from Colorado licensed insurers. To be licensed in Colorado, insurers must satisfy certain financial requirements imposed to ensure their financial stability. By inducing motorists to select insurance from Colorado licensed insurers with an offer of immunity, therefore, § 10–4–713(1) decreases the prospect that inadequate compensation will result as a consequence of a financially unsound insurance policy.

The United States satisfied § 10–4–713(1)'s goal of ensuring financially responsible policies. Rather than procuring a policy from an independent insurance company to provide benefits, the United States maintained a system of self-insurance whereby it paid benefits from its own coffers pursuant to the FECA, 5 U.S.C. § 8101 et seq. *Carter*, 982 F.2d at 1143–44 ("No one doubts that the national government is financially responsible in the sense that it can and will pay any judgment entered against it."). Accordingly, the United States satisfied the objective behind § 10–4–713(1)'s policy of encouraging private motorists to procure insurance from a Colorado licensed insurer, and therefore is in "like circumstances" with a private individual who satisfied the requirement of having a Colorado licensed insurer.

The District Court of Utah reached a similar conclusion in *United States Fidelity & Guar. Co. v. United States*, 728 F.Supp. 651 (D.Utah 1989), a case with virtually identical facts. In *Fidelity*, an insurance company attempted to recover from the United States PIP benefits paid under the Utah no-fault statute on account of an accident caused by the negligence of a United States' employee. Although the no-fault statute precluded tort suits to recover such benefits, the insurance company argued that the United States was not entitled to such immunity because it failed to possess one of the prescribed forms of owner's security required by the statute.

The district court rejected this argument, concluding that the United States was entitled to the protections of the Utah no-fault statute under the FTCA. The court reasoned that the United States' system of self-insurance constituted "financial security at least equivalent" to that required by the Utah no-fault law, and that the United States was therefore in "like circumstances" to a private individual who complied with the literal requirements of the no-fault statute. *Id.*, 728 F.Supp. at 654.

Additional support for our conclusion that the United States is entitled to the protection of § 10–4–713(1) can be found in the series of circuit court decisions upholding the right of the United States to invoke statutory liability caps where the United States complied with the objective underlying, although not the literal requirements of, provisions limiting private liability. *See Carter*, 982 F.2d at 1142–44, *Lozada v. United States*, 974 F.2d 986, 987–89 (8th Cir.1992); *Owen v. United States*, 935 F.2d 734, 736–38 (5th Cir.1991). In *Lozada*, for example, the Eighth Circuit concluded that a United States hospital was entitled to invoke a Nebraska statute placing a ceiling on medical malpractice liability, even though the United States failed to contribute to a compensation fund as required by the statute. The court reasoned that because the United States had agreed to pay the amount that would otherwise be withdrawn from the compensation fund as required by the capping statute, it had performed the "functional equivalent" of contributing to the fund. *Lozada*, 974 F.2d at 988. Thus, the court concluded, the United States hospital was "in 'like circumstances' to a hospital which has technically qualified under the Act." *Id.; accord Carter*, 982 F.2d 1141 (concluding that the United States was entitled to invoke the Indiana statute limiting the liability of qualified medical providers because the United States functionally complied with the prerequisites for a qualified medical provider); *Owen*, 935 F.2d at 737 (deeming the United States entitled to invoke the Louisiana statute limiting medical malpractice liability, notwithstanding its failure to contribute to a compensation fund as required by the statute, because the United States "met

the objectives" of this requirement by paying the amount that would otherwise be withdrawn from the fund).

■ These cases support the principle that, where the United States has satisfied the objectives of a statutory scheme, it is to be considered in "like circumstances" under the FTCA to a private party that has actually complied with the scheme. Here, we conclude that the United States functionally complied with § 10–4–713(1)'s objective of ensuring a financially responsible system of insurance. Accordingly, we hold that the United States is entitled to claim the protection offered by § 10–4–713(1).

■ Given this conclusion, we reverse the district court's grant of summary judgment in favor of Nationwide and vacate its order denying summary judgment to the United States. However, we decline to grant the United States' request for summary judgment. Section 10–4–715(1)(a) of the CAARA states that the CAARA only applies to tortfeasors such as the United States who are not covered by the CAARA if they possess "coverage equivalent to that required under section 10–4–706." C.R.S. § 10–4–715(1)(a). Here, the district court assumed, without deciding, that the United States possessed equivalent coverage because it concluded that the United States failed in any event to satisfy the requirements of § 10–4–713(1). Since we conclude that the United States did satisfy the requirements of § 10–4–713(1), it must now be determined whether the United States actually possessed equivalent coverage as required by § 10–4–715(1)(a). We therefore remand this case to the district court for such a determination.[6]

REVERSED AND REMANDED.

---

6. Whether the United States satisfied the requirements of § 10–4–715(1) is, once again, not merely a question of state law, but rather is governed by the principles of the FTCA. On remand, therefore, the district court must ascertain not only whether the United States satisfied the literal requirements of § 10–4–715(1)(a), but whether it functionally complied with the objectives of this provision.