**Gene LAFFERTY, Plaintiff,**

**Windsor Insurance Company, Intervening Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 94–13.**

United States District Court, E.D. Kentucky at Pikeville.

April 4, 1995.

Jim G. Vanover, Vanover & Hall, Pikeville, KY, for plaintiff.

James R. O'Dell, Lexington, KY, for intervening plaintiff.

Thomas Lee Gentry, Asst. U.S. Atty., Lexington, KY, for U.S.

## MEMORANDUM OPINION AND ORDER

PATTERSON, United States Magistrate Judge.

### I. INTRODUCTION

This matter is before the Court upon the motion of Defendant, the United States of America, for summary judgment dismissal pursuant to Fed.R.Civ.P. 56 of the claims asserted against Defendant by the Intervening Plaintiff, Windsor Insurance Company ("Windsor"), on the grounds that there are no genuine issues of material fact and, under applicable law, this Court does not have subject matter jurisdiction under the Federal Tort Claims Act over Windsor's subrogation claim for basic reparation benefits paid to its insured, Plaintiff, Gene Lafferty, pursuant to the Kentucky Motor Vehicle Reparations Act, ("MVRA") KRS 304.39–010, et seq. [Record No. 27]. The parties previously consented to the exercise by the undersigned of full judicial authority in this action pursuant to 28 U.S.C. § 636(c)(1) [Record Nos. 16, 19, and 20]. Intervening Plaintiff responded to the motion for summary judgment [Record No. 32], and the United States replied. [Record No. 34]. Said motion, being fully briefed, is now ripe for consideration.

### II. PROCEDURAL AND FACTUAL HISTORY

Plaintiff, Gene Lafferty, commenced this action in the Floyd Circuit Court under the Federal Tort Claims Act, ("FTCA") 28 U.S.C. §§ 1346(b) and 2671, et seq., and/or the National Guard Claims Act,[1] against Sergeant Ricky Lee Caldwell, of the Kentucky Army National Guard, for personal injuries arising from a vehicular accident which occurred in Floyd County, Kentucky. [Record No. 1, Attachment, Complaint]. The accident occurred on or about July 5, 1991, when Caldwell, a National Guard Recruiter, was driving a HUMVEE,[2] a light tactical vehicle owned by the United States of America, in

---

1. The United States questions the applicability of the National Guard Claims Act under the facts of this case and argues that jurisdiction rests solely by virtue of the Federal Tort Claims Act ("FTCA"). [Record No. 9, Answer]. As Intervening Plaintiff Windsor has not set forth any facts supporting jurisdiction under the National Guard Claims Act, the Court shall conclude that Windsor has abandoned its argument that jurisdiction is supported by such Act.

2. The HUMVEE, a general utility military vehicle, falls under the definition of a "motor vehicle" which is defined under the MVRA as:

   any vehicle which transports persons or property upon the public highways of the Commonwealth, propelled by other than muscular power except road rollers, road graders, farm tractors, vehicles on which power shovels are mounted, such other construction equipment customarily used only on the site of construction and which is not practical for the transportation of persons or property upon the highways, such vehicles as travel exclusively upon rails and such vehicles as are propelled by electrical power obtained from overhead wires while being operated within any municipality or where said vehicles do not travel more than five miles beyond the said limits of any municipality. Motor vehicle shall not mean moped as defined in this section.
   KRS 304.39–020(7).

which Lafferty, another National Guard officer, and two recruits, were passengers. [Lafferty Deposition, Record No. 30, p. 18, 29–37]. When the vehicle hit a trench in an unpaved road [3] located in Jenny Wiley Kentucky State Park, Lafferty, who was not wearing a seat belt, was thrown from his center-rear passenger seat into the roll bar of the HUMVEE and suffered bodily injuries. [*Id.*, p. 34–36; Caldwell Deposition, Record No. 29, p. 20].

Windsor, Lafferty's basic reparation obligor, filed an intervening complaint in the Floyd Circuit Court action for its statutory right of recovery in subrogation in the amount of $8,781.31 for no-fault or basic reparation benefits [4] paid to Plaintiff Lafferty as a result of Caldwell's alleged negligence. [Record No. 1, Attachment, Intervening Complaint]. In its motion for leave to file its tendered intervening complaint, Windsor also sought to add Lumbermen's Mutual Casualty Company as an intervening defendant. However, the intervening complaint did not name Lumbermen's Mutual, and instead, in the prayer portion thereof, Windsor sought recovery only from Defendant, Ricky Caldwell [*Id.*]. In a December 10, 1993 order of the Floyd Circuit Court, Windsor's motion for leave to intervene was granted and the tendered intervening complaint was filed, however, the order was silent about the issuance of summons for Lumbermen's Mutual. [*Id.*, Attachment, Order].

Defendant Caldwell's notice of removal [Record No. 1] was subsequently filed with this Court, as well as served on all other parties, on January 13, 1994 [Record No. 1]. The action was appropriately removed to this Court under 28 U.S.C. § 1442(a)(1), which

provides that when a civil action is commenced in a state court against an officer of the United States, the officer may remove the action to a United States District Court. Pursuant to 28 U.S.C. § 2679(d)(1), the United States Attorney filed a certification stating that Caldwell was acting within the scope of his employment as an employee of the United States at the time of the incident. [Record No. 3]. Accordingly, pursuant to the Federal Employee's Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679(d)(2), which provides that a suit against the United States shall be the exclusive remedy for persons claiming damages resulting from the actions of federal employees taken within the scope of their employment, the United States was substituted as a party for the individual Defendant, Ricky Caldwell, to defend against Plaintiff's negligence claim and Intervening Plaintiff's subrogation claim. [Record No. 6]. The United States proceeded then to file an answer [Record No. 9] to both the complaint and intervening complaint.

After some discovery was conducted in this action, including the taking of the discovery depositions of Ricky Caldwell and Plaintiff, Gene Lafferty, the United States filed the subject motion for summary judgment dismissal of Windsor's subrogation claim [Record No. 27]. Subsequently by way of a "Stipulation for Compromise Settlement" [Record No. 44], the Court was advised that the negligence claim between Plaintiff Lafferty and Defendant United States had been compromised and settled, leaving only the issue of Windsor's right of recovery in subrogation raised by the United States' pending summary judgment motion for resolution by

---

3. *See Lyle v. Swanks and Madison Standard Serv. Station,* Ky.App., 577 S.W.2d 427, 428 (1979) (holding that motor vehicle accidents occurring on private property are subject to the requirements and limitations of the MVRA).

4. "Basic reparation benefits," also known as personal injury protection benefits ("PIP"), are defined under 304.39–020(2) to mean:

benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle, subject, where applicable, to the limits, deduct-

ibles, exclusions, disqualifications and other conditions provided in this subtitle. The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one person as the result of one (1) accident shall be ten thousand dollars ($10,-000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic reparation benefits consist of one (1) or more of the elements defined as "loss" (which is further defined at KRS 304.39–020(5)).

the Court.[5]

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies under the FTCA.

■ As an initial matter, neither party pled nor otherwise addressed the threshold issue of whether this Court has subject matter jurisdiction by virtue of adequate exhaustion of Plaintiff's and/or Intervening Plaintiff's administrative remedies. 28 U.S.C. § 2401(b) and 2675 direct that a party seeking to sue the United States for the negligence of one of its employees must first present his claim to "the appropriate federal agency." 28 U.S.C. § 2401(b) governs the time limit for commencement of a FTCA suit and provides that:

[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2675(a) imposes the following exhaustion of administrative remedies requirement:

[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option

of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

Thus, a tort claim against the United States must be presented in writing to the appropriate administrative agency within two years of the time the claim accrued, and if the agency denies the claim, the claimant has six months from the date of denial to file his FTCA suit in a federal district court. *Severtson v. U.S.*, 806 F.Supp. 97, 98 (E.D.La. 1992). However, if the agency does not act on the claim by making its final disposition within six months after presentation thereof, the claimant, may, at his option, commence suit anytime thereafter. *Id.*

In a prior Memorandum Opinion and Order herein dated January 19, 1995 [Record No. 46], the undersigned concluded, from statements made in the United States' answer and pretrial memorandum, that the United States effectively conceded the issue of Plaintiff Lafferty's exhaustion of necessary administrative remedies at the time this action was removed from state court. 28 U.S.C. § 2675(a); *Pascale v. United States*, 998 F.2d 186 (3d Cir.1993); *Rogers v. United States*, 675 F.2d 123 (6th Cir.1982) (exhaustion remains a prerequisite to filing a claim under the FTCA when the original action is brought in a state court but is subsequently removed to federal court when a defendant is a federal employee who is sued for an incident which arose in the course of his employment).[6]

However, at the time the Court entered its Memorandum Opinion and Order ruling that Plaintiff Lafferty had properly exhausted his administrative remedies, the issue whether Intervening Plaintiff Windsor had exhausted its administrative remedies had not been established in the record. As expressly noted in Fed.R.Civ.P. 12(h)(3), and interpretive decisions, the Court's lack of subject matter jurisdiction is not subject to waiver, and thus

---

**5.** Plaintiff Lafferty's claims were subsequently dismissed in an Agreed Order of Settlement. [Record No. 50].

**6.** Thus, Plaintiff's allegation in his state court complaint that *the Army had not yet denied his claim* at the time of filing the state court action is legally incorrect. [Record No. 1, Attachment,

Notice of Removal]. Instead, the United States accurately maintains that Plaintiff's pursuit of administrative remedies proved fruitless when the Army constructively denied Lafferty's claim pursuant to 28 U.S.C. § 2401(b). [Record No. 40].

the Court *sua sponte* raised the matter. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Norridge Nursing Centre, Inc. v. U.S.,* 1993 WL 436382 (N.D.Ill.1993). [Record No. 46]. Thus, in the Court's previous Memorandum Opinion and Order, Intervening Plaintiff Windsor was ordered to show cause why this action should not be dismissed for lack of subject matter jurisdiction for its failure to perfect an administrative claim under the FTCA and/or the National Guard Claims Act, and the United States was ordered to show cause why its Motion for Summary Judgment should not be overruled as moot. *Norridge Nursing Centre, Inc. v. U.S.,* 1993 WL 436382 (N.D.Ill.1993) (unpublished decision). [Record No. 46].

Intervening Plaintiff Windsor responded to the Show Cause Order [Record No. 47], contending proper exhaustion of its claim had occurred, and in support thereof, attached an affidavit of its Senior Claims Examiner, Ann Eilers [Record No. 48], which states that on July 24, 1992, Windsor received a letter from Plaintiff's counsel enclosing a copy of Standard Form 95 which Plaintiff had filed on that same date with the Army National Guard in Frankfort, Kentucky. [Record No. 48, attached Form SF 95]. The form indicates that Plaintiff sought recovery against the Army in the amount of $100,000.00 for personal injury. In the insurance coverage section of the administrative claim filed by Plaintiff Lafferty, Moore Group, Inc. was listed as the accident insurance carrier. [*Id.*]. Correspondence attached to Ms. Eilers' affidavit indicates that Moore Group Insurance is affiliated with Windsor Insurance Company. [Record No. 48, 9/26/93 letter]. The insurance carrier, as reflected on the Standard Form, is noted as having paid certain doctor and hospital bills on behalf of Plaintiff. The Standard Form also indicates that Plaintiff's insurer intended to pursue its subrogation rights, although the amount of the insurance carrier's claim was not specified. [*Id.,* Standard Form 95, p. 2].

Affiant Eilers further states that Windsor took the position that no separate administrative claim for recovery of reparation benefits paid to or on behalf of Plaintiff needed to be filed with the Army, and that subsequent communications with the Department of Army confirmed that understanding.[7] [*Id*]. Additionally, the United States, in its Response to the Show Cause Order [Record No. 49], states that it is the Department of the Army's policy to treat a damages claim and an insurance carrier's claim for subrogation benefits as a joint claim. On September 26, 1993, Lafferty's counsel put Windsor on notice that Lafferty had filed a civil action in the Floyd Circuit Court and that Windsor's failure to assert its subrogation rights by intervention pursuant to KRS Chapter 411 would result in the loss of those rights in the event of a final award. [Record No. 48, Attached 9/27/93 Letter]. On that same date, September 26, 1993, Lafferty filed his complaint in the Floyd Circuit Court. [Record No. 1, Attached Complaint]. On or about December 7, 1993, Windsor filed a motion to intervene and tendered its intervening complaint, and by order dated December 10, 1993, the Floyd Circuit Court granted Windsor's motion to intervene and directed that its tendered intervening complaint be filed. [Record No. 1, Attachments]. On January 13, 1994, the United States filed its notice of removal to this Court. [Record No. 1]. On February 10, 1994, Windsor received a letter from the Department of Army formally denying Windsor's subrogation claim in the amount of $8,781.31. [Record No. 48, Affidavit, pp. 2–3, and 4/4/94 Letter].

In order for Windsor to satisfy the administrative "presentment" requirement of 28 U.S.C. § 2675(a), its administrative claim must: (1) give the Agency written notice of the claim sufficient to enable the Agency to investigate and (2) place a value on the claim. *Conn v. United States,* 867 F.2d 916, 918 (6th

---

7. A Lt. Coronal of the Commonwealth of Kentucky, Department of Military Affairs corresponded on October 23, 1992, with a Subrogation Specialist with Windsor regarding its subrogation claim. [Record No. 48, 10/23/92 letter]. The same Subrogation Specialist later wrote the Office of the Staff Judge Advocate on June 3, 1993 to advise that Windsor had not paid any additional benefits to Lafferty, and that the amount of its subrogation claim remained unchanged. [*Id.,* 6/3/93 letter].

Cir.1989). As has previously been established in the record, by virtue of the United States' concession of the issue without documenting same, Plaintiff Lafferty complied with these jurisdictional prerequisites. The Court now concludes, from the documents since provided by the parties in response to the Court's show cause order, that Plaintiff's Standard Form 95 adequately summarized the basis of Windsor's subrogation claim as well, and that the Army's denial of Windsor's claim in the amount of $8,781.31, which is the same amount Windsor seeks in the current action, was a sum certain amount albeit not mentioned in the Standard Form. *See Shelton v. U.S.*, 615 F.2d 713 (6th Cir.1980). The parties herein apparently agree that the Department of the Army properly treated the Standard Form 95 submitted by Plaintiff as a joint claim under 28 C.F.R. § 14.3(d) for the benefit of the Plaintiff Lafferty and the Intervening Plaintiff Windsor. *Executive Jet Aviation, Inc. v. U.S.*, 507 F.2d 508 (6th Cir.1974).[8] Accordingly, the Army had a full and fair opportunity to investigate Windsor's subrogation claim.

■ Furthermore, the materials submitted by the parties in response to the Court's show cause order demonstrate that Windsor exhausted its administrative remedies prior to the removal of this lawsuit from state court. Although Windsor did not receive a certified letter from the Department of Army advising that its subrogation claim in the amount of $8,781.31 was denied until February 10, 1994, Windsor appropriately exercised its recourse to treat its claim as having been constructively denied. Hence, the Army's failure to respond to Windsor's subrogation claim by the time Windsor filed its intervening complaint in state court renders Windsor's intervention timely and thus removes the exhaustion bar to subject matter jurisdiction. [Record No. 48].[9]

**B. Subject Matter Jurisdiction under the FTCA.**

■ Although subject matter jurisdiction is proper on the basis of Intervening Plaintiff's exhaustion of its administrative remedies, the United States argues, in its memorandum of law in support of its motion for summary judgment, that this Court lacks subject matter jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674. [Record No. 28]. As a result of the stipulation for compromise settlement [Record No. 44],[10] the parties agree that all factual issues have been resolved, and thus the only issue remaining for decision by the Court is the legal issue raised by the United States' motion regarding whether Windsor has a right of subrogation against the United States. [Record No. 45].

Pursuant to 28 U.S.C. § 1346(b), federal district courts have been granted exclusive subject matter jurisdiction to hear a personal injury tort claim "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." However, the scope of such jurisdiction granted in § 1346(b) must be measured in conjunction with the additional limitation in § 1346(b) that the circumstances be such that the United States "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," as well as the limitation found in 28 U.S.C. § 2674, which provides a limited waiv-

---

**8.** *See Nicholson Air Service, Inc. v. United States,* 686 F.Supp. 538 (D.Md.1988) (federal district court had subject matter jurisdiction in FTCA suit brought by insured although insurer, who was substituted as plaintiff under Fed.R.Civ.P. 17(a) filed administrative claim against the United States); *Interboro Mut. Indem. Ins. Co. v. U.S.,* 431 F.Supp. 1243, 1246 (E.D.N.Y.1977) (insurer was properly included as subrogee in insured's administrative claim; *Cummings v. U.S.,* 704 F.2d 437 (9th Cir.1983) (insurer, as subrogee, was real party in interest and intervening complaint operated as if party substituted under Fed. R.Civ.P. 17(a)).

**9.** *See McNeil v. U.S.,* —— U.S. ——, ——, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (interpreting 28 U.S.C. § 2675(a)) as requiring that administrative remedies cannot be deemed to have been exhausted until the expiration of six months from the time the administrative claim has been filed, and a FTCA suit commenced before the passage of six months is premature.

**10.** Although Lafferty and the United States settled all claims that Lafferty may have against the United States resulting from the accident in the Stipulation for Compromise Settlement, the United States did not admit liability or fault in the stipulation.

**1128**

er of sovereign immunity solely in the event that the United States' liability rests "in the same manner and to the same extent as a private individual under like circumstances." Reading the two statutes together, there is no doubt that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Westfield Companies v. U.S.*, 858 F.Supp. 658 (W.D.Mich.1993), *citing, United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983).

The parties do not dispute that the accident which is the subject of this action occurred in the Commonwealth of Kentucky, and that Kentucky law controls the United States' summary judgment motion. At issue are the applicable portions of the Kentucky Motor Vehicle Reparations Act ("MVRA"), the so-called No–Fault Act. Unlike the district courts in this circuit which have interpreted the Michigan no-fault act,[11] this is a case of first impression in Kentucky presenting the issue whether, under Kentucky law, a reparation obligor, such as Windsor, may recover, under a right of subrogation, No–Fault PIP benefits paid to its basic reparation insured, (*i.e.*, Plaintiff Lafferty), from the United States, the alleged tortfeasor and Defendant.

The United States argues that summary judgment is appropriate under Kentucky law because Windsor has not proven that a private individual under similar circumstances would be liable in tort and that subrogation against a secured person has been abolished under the Kentucky No–Fault Act. The linchpin of the United States' argument is that because tort liability has been abolished under the MVRA, the federal government cannot be held liable under the FTCA. 28 U.S.C. §§ 1346(b) and 2674. In response, Windsor advances the argument that the United States is not a "secured person" but rather a "reparation obligor" under the MVRA, and that Windsor has a statutory right to recover PIP benefits from the United States because tort liability, as between two reparation obligors, has not been abolished under the MVRA. Implicit in Windsor's reasoning is that the United States, through its employee Lafferty, operated the HUMVEE on the public roadways of Kentucky, and has, therefore, accepted the no-fault act provisions.[12] For the purpose of analyzing the parties' contentions, a two-pronged inquiry will be made. The first question is whether a basic reparation obligor's attempt to recover PIP benefits from the reparation obligor of a secured person constitutes an action lying in tort. The second issue is whether the United States is or can be deemed to be a reparation obligor under the MVRA.

**C. Abolition of Tort Liability under the MVRA.**

Under the Kentucky MVRA, every insurer is obligated to provide coverage for and pay up to a minimum of $10,000 for "economic loss" (*e.g.*, medical expenses, lost wages) suffered by a driver or occupant of the insured vehicle as a result of an accident involving the "use" of the vehicle, without regard to fault. KRS 304.39–020(2); 304.39–030(1); 304.39–040(1). These benefits are called "basic reparations benefits" in the MVRA, KRS 304.39–020(2), and sometimes called "PIP" ("personal injury protection") benefits, or "no fault" benefits in some decisions. To the extent that such benefits are paid, or payable to or on behalf of a person injured in a motor vehicle accident, the person receiving such benefits has no right of tort recovery for same from any alleged tort feasor. KRS 304.39–060(2). *Drury v. Spalding*, Ky., 812 S.W.2d 713, 716 (1991); *State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co.*, Ky.App., 684 S.W.2d 283, 285 (1984).

The United States relies on *United States v. Trammel*, 899 F.2d 1483 (6th Cir.1990) for the proposition that with respect to a vehicular accident under the Kentucky modified no-fault statute, tort liability is abolished for damages payable as basic reparation bene-

---

**11.** *See, inter alia, Westfield Companies v. U.S.*, 858 F.Supp. 658, 660 (W.D.Mich.1993).

**12.** *See United States v. Trammel*, 899 F.2d 1483, 1485 (6th Cir.1990) (in Kentucky, all drivers are deemed to have accepted the abolition of tort liability for the first $10,000 of economic loss, or PIP benefits).

fits. .KRS § 304.39–060. The Sixth Circuit in *Trammel,* construing Kentucky law, held that the $10,000 economic loss threshold determines whether a cause of action in tort exists. To-wit, "[b]elow the threshold, no tort liability exists; above the threshold, the concept of fault and attendant tort liability remains intact." *Id.,* at 1488. Hence, "for the first $10,000 of medical recovery, the Kentucky statute abolishes tort liability." *Id.,* at 1489. One of the factors on which the Court's conclusion was based was the plain meaning of the statutory language in KRS § 304.39–060(2)(a) which states:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is 'abolished' for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor....

*Id.* Thus, because under Kentucky law an injured person collects PIP benefits from his or her own carrier, "an action to recover no-fault benefits is an action on an insurance contract." *United States v. Allstate Ins. Co.,* 754 F.2d 662, 667 (6th Cir.1985), *citing, France v. Kentucky Farm Bureau Mut. Ins. Co.,* Ky.App., 605 S.W.2d 773, 774 (1980) (survivors' action to recover basic reparation benefits under KRS 304.39–040(1) was in contract).

Recognizing that tort liability is abolished to the extent that no-fault benefits are payable, the United States argues that "KRS 304.39.070(2) which provides a limited right of subrogation to an insurance company for benefits paid is necessarily a remedy other than in tort." Hence, the crux of the United States' argument is that any cause of action in subrogation brought by an injured person's insurance carrier, called a "reparation obligor," under KRS 304.39.070(2), precludes liability against the United States because the FTCA only supports actions lying in tort. [Record No. 28, p. 3]; *See State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.,*

Ky., 808 S.W.2d 805, 807 (1991). However, as Windsor accurately points out in its Memorandum in Opposition, "the only actions for tort liability abolished by Section .060 of the MVRA are those against 'the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required' by the Act." *Bailey v. Reeves,* Ky., 662 S.W.2d 832, 835 (1984). [Record No. 32]. Further, Windsor argues that "there is no basis for Defendant's conclusion that it is relieved of liability under the FTCA, because Windsor's remedy does not sound in tort. To the contrary the only way in which Windsor may prevail under KRS 304.39–070(3) is by establishing negligence on the part of the United States' employee." [*Id.,* p. 4].

The United States' argument that because a basic reparation insured's tort liability is abolished under KRS 304.39.060(2)(a), Windsor's subrogation remedy is an action other than in tort, is not correct. In fact, several cases cited by Windsor compel a different result. For example, in its Memorandum, Windsor asserts that its subrogation claim has not been brought under KRS 304.39–060(2), for which tort liability has been abolished, but rather KRS 304.39–070(3) which preserves tort liability, and which provides that:

> A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3).[13] The reparation obligor shall elect to assert its claim (i) by joining as a party in an action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–030, sixty (60) days after said claim has been presented to the reparation obligor of secured persons. The right to recover basic reparation benefits paid under (ii) shall be limited to those instances established

**13.** KRS 304.39–140(3) provides:
If the injured person, or injured persons, is entitled to damages under KRS 304.39–060 from the liability insurer of a second person, a self-insurer or an obligated government, collec-

tion of such damages shall have priority over the rights of the subrogee for its reimbursement of basic or added reparation benefits paid to or in behalf of such injured person or persons.

applicable by the Kentucky insurance arbitration association in KRS 304.39–290.[14] KRS 304.39–070(3).

■ The statutory right of subrogation created by the MVRA supersedes any common law subrogation right. *See Kentucky Central Ins. Co. v. Kempf,* Ky.App., 813 S.W.2d 829 (1991).[15] Accordingly, Windsor relies on *Ohio Sec. Ins. Co. v. Drury,* Ky. App., 582 S.W.2d 64, 67 (1979), which held that subsection (3) of KRS 304.39–070 creates a separate right of recovery in the basic reparation obligor and that "the purpose of the statute is to allocate, still under a fault concept, the ultimate responsibility for the benefits paid to the injured parties." *Id.,* at 67.[16] The Kentucky Court of Appeals later cited the *Drury* decision in holding that "KRS 304.39–070(3), which requires either intervention or arbitration on the part of the basic reparation obligor, attempts to provide a mechanism for reimbursement of losses paid as basic reparation benefits based solely on the law of torts." *Affiliated FM Ins. Companies v. Grange Mutual Casualty Co.,* Ky.App., 641 S.W.2d 49, 51 (1982).

In summary, as the Sixth Circuit held in *Trammel,* tort liability as between injured persons, to the extent no-fault benefits are payable, has been abolished by KRS § 304.39–060(2)(a). However, Windsor accurately maintains that the fault concept remains allocated between injured persons' reparation obligors pursuant to KRS 304.39–070(3), and thus, tort liability for Windsor's claim herein has not been abolished by the Kentucky MVRA. Accordingly, the Court's next consideration is to determine if the United States falls within the definition of a "reparation obligor" as defined in the Kentucky no-fault act.

**14.** KRS 304.39–290 creates the Kentucky Insurance Arbitration Association, and provides for its membership, powers and duties.

**15.** *Overruled on other grounds, Coots v. Allstate Ins. Co.,* Ky., 853 S.W.2d 895 (1993).

**16.** *IFA Ins. Co. v. Waitt,* 270 N.J.Super. 621, 637 A.2d 941, 944 (N.J.Super.A.D.1994), explained the *Drury* decision as follows:

the court allowed reimbursement of the PIP carrier when the tortfeasor's liability policy limits had been nearly or completely exhaust-

## D. Application of the Definition "Reparation Obligor" to the United States.

■ Windsor argues in its Memorandum that the United States is a reparation obligor as defined in KRS 304.39–020(13) because the federal government, by allowing its driver, Caldwell, to use the public roadways, has furnished the equivalent of no-fault benefits. [Record No. 32, p. 2]. Specifically, KRS 304.39–020(13) describes a reparation obligor as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits under this subtitle." The characterization of the United States as a reparation obligor of the tortfeasor, or secured person, would subject the federal government to subrogation claims by a basic reparation obligor under KRS 304.39–070. Alternatively, if the United States does not fall within the definition of "reparation obligor," then under Kentucky law, Windsor does not have a cause of action under KRS 304.39–070(3) because the statute was meant to govern the rights between two reparation obligors and does not apply to a situation where only one reparation obligor is present before the court. *Ohio Sec. Ins. Co. v. Drury,* Ky.App., 582 S.W.2d 64 (1979). As explained by the Supreme Court of Kentucky in interpreting KRS 304.39–070(3) in the context of a basic reparation obligor's attempt to recover from an excess liability insurance carrier:

This section expressly authorizes a reparation obligor such as State Auto to recover basic reparation benefits from the reparation obligor of the secured person. This right is specially created by statute and allows subrogation between basic reparation obligors provided available coverage is not exhausted and that payments to the injured party are not diminished. See

ed. That court did not look to the legislative intent but simply explained its decision as being "an operation of law," because the statute provided the PIP carrier a "right to recover basic reparation benefits paid" to the injured party. Shortly thereafter, the applicable Kentucky statute, KRS 304.39–050, was amended to limit the PIP carrier's reimbursement to the tortfeasor's liability policy limits, and then only to the extent that coverage remains after payment for the injured party's recovery.

KRS 304.39–070(4) and KRS 304.39–140(3). The provisions of KRS 304.39–070(3) provide for subrogation *only* between basic reparation obligors.

*State Automobile Mutual Ins. Co. v. Empire Fire & Marine Ins. Co.*, Ky., 808 S.W.2d 805, 807 (1991) (emphasis in original).

The Kentucky Supreme Court in *State Automobile* further held that a reparation obligor's right to subrogate against "any person or organization other than a secured person" is not unlimited. *Id.*, at 807; KRS 304.39–070(2). When the reparation obligor in *State Automobile* attempted to recover against the secured person's excess liability carrier by proposing that the statute should be read expansively to allow recovery against any entity except for the one expressly omitted, the secured person, the court disagreed:

> What appellant overlooks, however, is the language which makes such right derivative. The right of the reparation obligor to subrogation is dependent upon the right of the injured person to recover such damage. Inasmuch as the injured person's right to recover is abolished by KRS 304.39–060(2)(a), the reparation obligor has no right to recover items of damage not available to the injured person.

*State Auto. Mut.*, 808 S.W.2d at 807.

Therefore, Windsor's right of subrogation rests on the determination whether the United States is one of the entities enumerated under KRS 304.39–020(13), *i.e.*, "an insurer, self-insurer, or obligated government." .

### 1. *Insurer*

■ An "insurer" is not a defined term under the MVRA, but under normal rules of statutory construction, the word must be given its plain meaning. *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984). The ordinary meaning of the term "insurer" in the present context means a commercial insurance company which provides no-fault benefits under the MVRA. *Blue Cross & Blue Shield of Kentucky, Inc. v. Baxter*, Ky.App., 713 S.W.2d 478, 480 (1986) (a group health insurer, which did not provide no-fault benefits, was not an "insurer" under MVRA). Thus, the Court concludes that the term "insurer" does not encompass the United States.

### 2. *Self-insurer*

Similarly, the United States is not a self-insurer under the MVRA because it has not applied for such status with the Commonwealth of Kentucky's Commissioner of Insurance. The applicable statute under the MVRA, KRS 304.39–080(7), provides that self-insurance is "subject to approval of the commissioner of insurance" and "is effected by filing with the commissioner" certain documentation, including an explanation of the insurance undertaking. The pertinent Kentucky Administrative Regulation, 806 KAR 39:050, further expounds on the application process that a self-insurer must effectively complete in order to acquire such status.

The Kentucky courts' opinions which discuss the statutory self-insurer provisions have not described the qualification process in any particular detail. The Kentucky Court of Appeals has described a "self-insurer" as "one who sets aside a fund to meet losses instead of procuring insurance." *Wine v. Globe American Casualty Co.*, Ky.App. (1995) (slip opinion). *See Bohl v. Consolidated Freightways Corp. of Delaware*, Ky.App., 777 S.W.2d 613, 615 (1989) (a trucking company, whose employee/driver was involved in an accident in Kentucky, was held to be a self-insurer under KRS 304.39.020(13)). However, the Sixth Circuit in *Employers Ins. of Wausau v. Auto Owners Ins. Co.*, 775 F.2d 774, 776 (6th Cir.1985), noted that the Kentucky statutory scheme provides that a self-insurer *must* certify with the state in order to become a self-insurer. Because neither party in this case has proven that the United States has fulfilled the requisite application and certification process, the Court must conclude that the United States is not a self-insurer under KRS 304.39–080(7).

Although the United States is not a self-insurer as defined under the Kentucky no-fault act, the United States District Court for the Western District of Michigan in a recent case implied, without directly finding, that the determination whether or not the United States has actually applied for no-fault insurance under a Michigan self-insurance statutory provision was irrelevant in the Court's determination that the United States was

nonetheless self-insured under the Michigan no-fault act. *Westfield Cos. v. United States*, 858 F.Supp. 658, 661 (W.D.Mich.1993). In *Westfield*, the insurers of a retail clothing store brought an action against the United States for subrogated losses which arose from an accident which occurred when an Army convoy truck, which was being towed, broke loose and crashed into the store, causing damage to the insured building. *Id.*, at p. 659. The Court found that the United States was a self-insured entity under the Michigan no-fault act: "[b]ecause the government is not required to register its vehicles in Michigan, it is not required to obtain personal protection insurance, property insurance, and residual liability insurance pursuant to M.C.L. § 500.–3101(1)." *Id.*, at 661. Although the federal government was exempt from registration, the court ruled that the United States was a self-insured under M.C.L. § 500.3101(4).[17] *Id.* Crucial to the Court's finding that the United States was self-insured, as opposed to a non-insured entity, under the Michigan no-fault act was evidence that the United States had "equivalent security." In particular, the court focused on 28 U.S.C. § 2679 which "serves as 'equivalent security' which, under the Supremacy Clause, the Michigan Secretary of State would be obligated to accept. The United States, for purposes of Michigan's No–Fault Act, is to be treated as an insured entity." *Id.* This determination by the court in *Westfield* closely paralleled the United States' argument in that case that:

> while the federal government does not purchase automobile insurance as an individual would, it has enacted 28 U.S.C. § 2679(b), which states that the United States will step into the shoes of and defend federal government employees operating motor vehicles who are acting within the scope of their employment.

*Id.*, at 661.

Nevertheless, the district court's finding that the United States was self-insured did not end the *Westfield* court's analysis. After concluding that the United States was self-insured, the Court found that the federal government was not liable under federal law for the property damage sustained by the store because the waiver of sovereign immunity under 28 U.S.C. § 1346(b) did not encompass a remedy for strict liability under a no-fault law for property damages which are payable regardless of fault. *Id.*, at 663.

Although the United States also argues in this case that it has provided security under 28 U.S.C. § 1346(b), the Kentucky MVRA is distinguishable from the Michigan statutes analyzed in *Westfield* in at least two respects. First, the Sixth Circuit has underscored the statutory language in the Kentucky no-fault act which directs that an entity must satisfy the application process with the Commonwealth of Kentucky's Commissioner of Insurance established by statute in order to qualify as a self-insurer, a requirement which was not fully discussed in *Westfield*. *Employers Ins.*, 775 F.2d at 776; *Westfield*, 858 F.Supp. at 661. Second, the Kentucky MVRA and decisions by Kentucky courts, as discussed below, expressly exclude the federal government from the Kentucky no-fault act's financial responsibility provisions unless the federal government elects, or opts in, such statutory provisions. By contrast, the state and federal district courts in Michigan have consistently held that although the federal government is exempt from the *registration* provisions contained in the Michigan no-fault act, non-registered vehicles are still "covered by the No–Fault Act." *Zotos v. United States*, 654 F.Supp. 36, 37–38 (E.D.Mich. 1986). However, the Kentucky MVRA expressly *exempts* the federal government from the security provisions. Accordingly, the United States cannot be deemed to be a "self-insurer" under the Kentucky MVRA.

### 3. *Obligated Government*

The United States correctly argues that it does not fall under the third definition of a

---

**17.** M.C.L. § 500.3101(4) provides that:

Security required by subsection (1) may be provided by any other method approved by the secretary of state as affording security equivalent to that afforded by a policy of insurance, if proof of the security is filed and continuously maintained with the secretary of state throughout the period the motor vehicle is driven or moved upon a highway. The person filing the security has all the obligations and rights of an insurer under this chapter. When the context permits, "insurer" as used in this chapter, includes any person filing the security as provided in this section.

reparation obligor because the federal government is not an "obligated government" under the Kentucky no-fault act. [Record No. 28, p. 5–7]. KRS 304.39–080(9) defines an obligated government as "[a]n entity described in subsections (3) [18] or (4) that has provided security pursuant to subsection (6)." The entities and their corresponding responsibilities described in subsection (4), which are pertinent to this discussion, include:

> The United States and its public agencies and any other state, its political subdivisions, municipal corporation, and public agencies may provide, pursuant to subsection (6), security for the payment of basic reparation benefits in accordance with this subtitle for injury arising from maintenance or use of motor vehicles owned by those entities and operated with their permission.

KRS 304.39–080(4) (emphasis added).

The permissive language of KRS 304.39–080(4) signifies that the United States must expressly opt-in to the provisions of the MVRA by providing security. "Security" may be provided in accordance with subsection (6) "by a contract of insurance or by qualifying as a self-insurer or obligated government in compliance with this subtitle." KRS 304.39–080(6). As for the type of security required, 806 KAR 39:040(2) guides this analysis:

> [a]ny governmental unit, which by appropriate action elects to become an obligated government, may meet its obligations by: (1) Providing security by acquiring a contract of insurance, or (2) By providing security merely by obligating itself to pay basic reparation benefits in accordance with KRS Chapter 304, Subtitle 39.

Although Section 3 of the regulation, 806 KAR 39.040(3), explains that a governmental unit becomes an obligated government by purchasing insurance, the regulations do not give any further instruction on how a government becomes obligated by paying basic reparation benefits as mentioned in 806 KAR 39:040(2), subpart (2). However, the regulation does state that "[o]bligated governments who have not acquired a contract of insur-

ance may have rights and duties under KRS 304.39–290 and should make the appropriate contacts with the Kentucky Arbitration Association in order that they may protect such rights and duties." *Id.*

As with the self-insurer statutory provision, it is clear that under Kentucky law, the United States only becomes an obligated government if it expressly opts in the no-fault statutory scheme. An opinion of the Kentucky Attorney General, Ky. OAG 80–494, (September 8, 1980) concluded that the federal government is specifically exempted from the general liability and basic reparation insurance requirements of the no-fault act. KRS 304.39–080(5). The pertinent Kentucky regulations describe the federal government's automatic exemption from the no-fault act in 806 KAR 39:040, which states that the function of KRS Chapter 304, Subtitle 39, is to require "all other owners to either accept limitation on their tort rights and obligations or to affirmatively reject such limitations." The regulation further states that "[g]overnment units ... are not subject to KRS Chapter 304, Subtitle 39, and need not take any affirmative action thereunder unless, and until by appropriate action, they elect to become obligated governments." 806 KAR 39:040(1).

Although the precise issue of whether the United States may constructively become a reparation obligor under the MVRA has not been addressed by the Kentucky or federal courts, the cases which find that the federal government must opt-in the statutory scheme to become an obligated government are in accord. As one Kentucky decision commented, "[t]he MVRA has introduced a form of compulsory insurance to Kentucky. Except for governmental agencies, every owner of a motor vehicle registered or operated in Kentucky must provide 'security' for the payment of 'basic reparation benefits' and the payment of 'tort liabilities.' KRS 304.39–080(5)" *Ammons v. Winklepleck,* Ky. App., 570 S.W.2d 287 (1978); *see also, Davis v. Transit Authority of River City,* Ky.App., 710 S.W.2d 873, 874 (1986); *Fann v. McGuffey,* Ky.App., 534 S.W.2d 770, 779 (1975). Therefore, as the United States has not affir-

---

**18.** The entity described in subsection (3) is the   Commonwealth of Kentucky.

matively opted in to the relevant statutory provisions, the Court concludes that the United States is not an "obligated government" under the MVRA.[19]

### E. United States as a "Secured Person" under the MVRA.

■ As observed above, in interpreting the relevant statutory language, it is apparent that the United States is not a reparation obligor and is exempt from the financial responsibility provisions of the Kentucky MVRA. The next question presented is whether the United States is liable under the FTCA, which is answered by evaluating whether a private individual under like circumstances would be liable for reparation benefits in tort.

As noted earlier in this Opinion, tort liability for certain damages, to the extent that PIP benefits are payable, has been abolished in KRS § 304.39–060(2)(a). [*Supra*, pp. 1128–1130]. The United States argues that if a private individual were sued as a defendant/tortfeasor, such an individual would be classified under the MVRA as a "secured person." Secured persons are expressly exempt from liability for subrogation claims for PIP benefits paid pursuant to 304.39–070(2) which states, in pertinent part, that:

> A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person.

Thus, an insurer does not have a tort claim for recovery of no-fault benefits against a secured person.

With these principles in mind, the United States notes that the United States has been substituted as the Defendant herein in place of Defendant Caldwell, the alleged tortfeasor who was driving the HUMVEE at the time of the accident. Thus, the argument follows that the United States occupies the same status as a private individual/alleged tortfeasor who is a "secured person" under the MVRA. A "secured person" under the Kentucky no-fault act is described as "the owner, operator or occupant of a secured vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." KRS 304.39–070(1). However, the scarce Kentucky case law interpreting "a secured person" under the MVRA does not assist the Court in evaluating whether the United States would qualify as a secured person under the facts of this case. *See U.S. Fidelity & Guaranty Co. v. Smith*, Ky., 580 S.W.2d 216 (1979). Nevertheless, as opposed to a "basic reparation insured" defined in KRS 304.39–020(3), a "secured person" is not restricted only to human beings.[20] Furthermore, the Kentucky courts have expansively applied the definition of "operator or user." *See Probus v. Sirles*, Ky.App., 569 S.W.2d 707 (1978) (an *un*insured driver who had only recently obtained a driver's license was an "operator or user" under KRS 304.39–020). Clearly, the Army "owned" the HUMVEE, and thus, the United States falls within the definition of "owner," which is defined as "a person, other than a lienholder or secured party, who owns or has

---

**19.** The Court's view that the United States is not a reparation obligor is consistent with the Sixth Circuit's refusal to allow the United States to recover for medical expenses paid under Kentucky's No–Fault Act where the United States already had a duty to pay for the medical expenses of its injured employee. The United States was denied third party beneficiary status because:

> · [g]iven the exhaustible nature of no-fault benefits, we cannot accept the government's position that any person legally obligated to provide medical services should be allowed to claim under the no-fault system, since this enlargement in the class of beneficiaries could frustrate the legislature's stated intention of "providing prompt payment to victims of mo-

tor vehicle accidents," K.R.S. § 304.39–010(2), by creating competing claims to basic reparation benefits.

*United States v. Allstate Ins. Co.*, 754 F.2d 662, 667 (6th Cir.1985). *See also United States v. Trammel*, 899 F.2d 1483 (6th Cir.1990).

**20.** In contrast, a "basic reparation insured" under KRS 304.39–020(3) has been interpreted by the Kentucky Courts as a live human being. In *United States v. Allstate Ins. Co.*, 754 F.2d 662 (6th Cir.1985), the Sixth Circuit discussed the case of *Gregory v. Allstate Insurance Co.*, Ky.App., 618 S.W.2d 582 (1981), which held that "person" under KRS 304.39–020(5)(b) was interpreted as only applying to live human beings.

title to a motor vehicle or is entitled to the use and possession of a motor vehicle subject to a security interest held by another person...." KRS 304.39–020(12). Although the federal government is not an enumerated entity under the "secured person" definition found at KRS 304.39–070(1), in addition to being the "owner" of the HUMVEE, the United States is "legally responsible" for the acts or omissions of the HUMVEE's operator. Hence, the Court concludes that the United States is a "secured person" pursuant to KRS 304.39–070(1).

■ In addition to being a secured person, the second requirement contained in KRS 304.39–070(1) for exemption from liability for subrogation claims is that a secured vehicle be involved. Contrary to the United States' assertion that the MVRA does not define "secured vehicle," KRS 304.39–080(1) specifies "security covering the vehicle" as "the insurance or other security so provided." Although the United States is exempted from the financial security provisions of the no-fault act and does not fall under the definitions of "insurer", "self-insurer" or "obligated government", the HUMVEE is a secured vehicle nonetheless because the United States has provided "other security" for the vehicle. *Id.* Although said security does not take the form of no-fault benefits, as the United States accurately asserts in its Memorandum, the United States is "legally responsible for the acts or omissions of the owner and operator of the vehicle, its employee, pursuant to the Federal Employee's Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(b–d)." [Record No. p. 3]. The rights an injured person may have against the United States arise solely from the Federal Employee's Liability Reform and Tort Compensation Act, which grants immunity to federal employees for damages caused by negligent operation of a motor vehicle during the scope of employment. Thus, the United States assumes full responsibility for

its employees under the federal act which also provides that an injured person's exclusive remedy under the FTCA is a civil action against the United States. *Combs v. U.S.,* 768 F.Supp. 584 (E.D.Ky.1991); *Vantrease v. U.S.,* 400 F.2d 853 (6th Cir.1968). Additionally, under certain circumstances, the United States may provide benefits for medical expenses and lost wages to its own injured employees under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*

■ Neither party has cited any case authority where in an FTCA action to which Kentucky law applies, the United States, although not subject to the underlying state statute, was nonetheless found to have an obligation to comply with the state statutory provisions. However, other federal courts have held that the United States may derive certain benefits to which a "secured person" would be entitled under other states' No-Fault Acts.[21] In the words of one court, so long as the United States provides the functional equivalent of security required under the state no-fault act, the United States satisfies its financial obligation under the state statutory scheme:

> In light of these principles, and the fact that the Supremacy Clause of Article VI of the U.S. Constitution precludes Colorado from requiring the United States to maintain insurance with a Colorado licensed insurer (a fact that Colorado itself recognizes), it seems to us that so long as the United States provides protection that is equivalent to that which Colorado can and does require of private parties, the United States should be able to take advantage of the immunity that Colorado law offers to private parties. Accordingly, since the United States functionally complied with the requirements of § 10–4–713(1) by maintaining a financially responsible sys-

**21.** *See Nationwide Mut. Ins. Co. v. U.S.,* 3 F.3d 1392 (10th Cir.1993), as discussed in *Allstate Ins. Co. v. U.S.,* 864 F.Supp. 1015 (D.Colo.1994); *Westfield Cos. v. U.S.,* 858 F.Supp. 658 (W.D.Mich.1993); *U.S. Fidelity & Guar. Co. v. U.S.,* 728 F.Supp. 651, 654 (D.Utah 1989) (federal government resembles a "secured" owner of vehicle because under Utah law an insurer can

not recover PIP benefits from a private person, hence the FTCA does not waive sovereign immunity to allow recovery against the United States, the tortfeasor's employer); *Liberty Mut. Ins. Co. v. U.S.,* 490 F.Supp. 328 (E.D.N.Y.1980). *Contra, General Casualty Insurance Co. v. United States,* 1987 WL 10551 (D.N.D.1987).

tem of self-insurance, we conclude that the United States was in "like circumstances" to a private individual who actually procured insurance from a Colorado licensed insurer.

*Nationwide Mut. Ins. Co. v. U.S.*, 3 F.3d 1392, 1396–97 (10th Cir.1993).[22] This Court agrees with the holding of the Tenth Circuit in *Nationwide* that "where the United States has satisfied the objectives of a statutory scheme, it is to be considered in 'like circumstances' under the FTCA to a private party that has actually complied with the scheme." *Id.*, at 1398.[23]

The Court finds that the United States' legal responsibility to provide benefit coverage to its own employees under FECA, and to injured tort victims through the waiver of sovereign immunity under the FTCA, where appropriate, constitutes "security covering the vehicle" as defined in KRS 304.39–080(1). As such, the United States provides the functional equivalent of "basic reparation benefits" under KRS 304.39–020(2).

Hence, the United States has functionally complied with the stated purpose of the Kentucky MVRA set forth in KRS 304.39–010(1) which requires "owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles." Insofar as the Kentucky no-fault act compels security, one of the primary purposes of that requirement is to ensure that the injured parties in a vehicular accident receive prompt medical treatment without regard to fault. KRS 304.39–010(2). As the Sixth Circuit has recognized, "[t]he purpose of Kentucky's no-fault legislation . . . is to provide prompt medical treatment and rehabilitation of the accident victim by providing prompt payment of needed medical care." *United States v. Trammel*, 899 F.2d 1483, 1488 (6th Cir.1990), *citing, United States v. Allstate Ins. Co.*, 754 F.2d 662, 666 (6th Cir.1985); *Employers Insurance of Wausau v. Auto Owners Insurance Co.*, 775 F.2d 774, 776 (6th Cir.1985). Accordingly, as the functional equivalent of a "secured person" under the Kentucky MVRA, the United States has no liability in tort for the subroga-

---

**22.** According to *Allstate Ins. Co. v. United States*, 864 F.Supp. 1015, 1017 (D.Col.1994), "[t]he Court of Appeals remanded the case [*Nationwide Mut. Ins. Co. v. U.S.*, 3 F.3d 1392 (10th Cir. 1993)], for determination of an additional issue, that is, whether or not the self-insurance coverage provided by the United States is in fact equivalent of that required by CAARA [the Colorado No–Fault Act]." *Allstate* addressed the equivalency of the United States' coverage, under a distinct fact scenario, finding that:

> A comparison of the coverage requirements of § 10–4–706 with the coverage actually provided under the terms of the FTCA and FECA demonstrates that the United States is in compliance with § 10–4–715 and provides equivalent coverage for persons injured in auto accidents. CAARA requires legal liability coverage for bodily injury or death of $25,000 to any person in any one accident and $50,000 to all persons in one accident, and $15,000 worth of property damage coverage for any one accident. § 10–4–706(1)(a). The FTCA, through a waiver of sovereign liability for individual tort claims, provides for unlimited liability coverage, under state liability laws. Section 10–4–706(1)(b) requires no-fault compensation for medical expenses benefits of up to $50,000. § 10–4–706 also requires payments for rehabilitation, limited amounts of lost wages, and $1000 as a death benefit. FECA, 5 U.S.C. § 8101, provides that federal government employees are entitled to no-fault benefits for any

injuries stemming from the performance of work, including unlimited coverage for medical bills, rehabilitation, and lost wages, and also provides death benefits tied to an employee's salary. Clearly, the United States, through its waiver of sovereign immunity in FTCA, and through the benefits provisions of FECA, provides "coverage equivalent to that required under section 10–4–706" as required under C.R.S. § 10–4–715(1)(a). Thus, Plaintiff is not entitled to bring a subrogation action against Defendant United States for PIP benefits it paid to its insured as a result of the bus accident.

*Id.*, at 1018–19.

**23.** *See also U.S. Fidelity & Guaranty Co. v. U.S.*, 728 F.Supp. 651, 654 (D.Utah 1989), in which the Court found that the United States was not uninsured under the Utah no-fault law, but rather:

> [b]ecause the federal government provides its employees with financial security at least equivalent to that required by Utah law, [the Federal Employees Compensation Act obligates the federal government to provide unlimited coverage of its employees' medical bills and wage loss], the federal government is in similar circumstances to a "secured" owner or operator of a vehicle despite the fact that the federal government did not select one of the options described in § 41–12a–103(9).

tion claim of Windsor, as such subrogation claim can only be brought against the "secured person's" "basic reparations obligor." KRS 304.39–070(3).

Parenthetically, although the issue has not been raised by either party herein, the undersigned questions Windsor's payment of PIP benefits to or on behalf of Plaintiff, Gene Lafferty. Under KRS 304.39–050(1), basic reparations benefits, or PIP benefits, are paid by the carrier providing "the security covering the vehicle occupied by the injured person at the time of the accident." Plaintiff Lafferty was a passenger in the Army's HUMVEE when he sustained the injuries that are the subject of this action. The record in this case is silent as to whether Plaintiff was acting in the course and scope of his employment as a member of the Kentucky Army National Guard at the time of the accident, but presumably Mr. Lafferty did not qualify as a government employee at the time of the accident, as Windsor paid his medical and other "no-fault" basic reparations benefits, rather than the United States. Presumably, then, Windsor paid such benefits pursuant to KRS 304.39–050(2), which provides that "[i]f there is no security covering the vehicle, any contract of basic reparation insurance under which the injured person is a basic reparation insured shall apply." Thus, one may surmise that Mr. Lafferty had an appropriate Kentucky no-fault policy with Windsor for a personal vehicle which Mr. Lafferty owned or was a named insured, and Windsor paid pursuant to such policy for such vehicle.

As noted above, this Court has now determined that the United States provided the "security covering the vehicle" in which Plaintiff Lafferty was riding at the time of his injury. Whether that determination provides a remedy ultimately for Windsor's claim herein is not an issue raised by any party, however, and thus the Court declines to address the question of any possible alternative means by which Windsor might recover for the benefits it has paid to or on behalf of Mr. Lafferty.

Although Windsor's argument that a reparation obligor which sues the United States will be otherwise left without a remedy is not without force, the Court's finding that the United States is *not* a reparation obligor is consistent with the policies underlying the Federal Tort Claims Act, as the United States is liable only to the extent that it has expressly waived its sovereign immunity. Further, the Court's finding does not vitiate the language or spirit of the MVRA, the primary purpose of which is not to ensure that a reparation obligor's subrogation rights are effectuated, but rather to provide prompt payment, without regard to fault, to persons injured in accidents on Kentucky public roadways.

Furthermore, as the Tenth Circuit held in *Nationwide*, "[t]he 'like circumstances' inquiry is designed to prevent state legislatures from using the United States' waiver of sovereign immunity under the FTCA as an occasion to 'enrich their own citizens at the expense of the deepest pocket.'" *Nationwide*, 3 F.3d at 1396, citing, *Carter v. U.S.*, 982 F.2d 1141, 1143 (7th Cir.1992). Without express statutory language indicating otherwise, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1346(b) over Windsor's claim against the United States because sovereign immunity has not been expressly waived.

Finally, Windsor's contention that the United States mistakenly relies on *Liberty Mutual Ins. Co. v. U.S.*, 490 F.Supp. 328 (E.D.N.Y.1980), and *U.S. Fidelity & Guar. Co. v. U.S.*, 728 F.Supp. 651 (D.Utah 1989) for the proposition that Windsor can not maintain an action in subrogation for no-fault benefits is misplaced. [Record No. 32, pp. 4–5]. In particular, Windsor argues that the applicable no-fault acts in the cases relied on by the United States are distinguishable because those state no-fault schemes had extinguished tort remedies and did not allow an insurer to seek first party benefits. However, in the cited cases, the only available remedy between the two insurers was mandatory arbitration. Windsor's suggestion that the United States' liability under the FTCA hinges on whether the available state remedy is arbitration, as opposed to subrogation, is unpersuasive. It is undisputed that under Kentucky law, a reparation obligor may either intervene or proceed with arbitration.

KRS 304.39-070(3); *Grange Mutual Casualty Co. v. McDavid,* Ky., 664 S.W.2d 931 (1984). However, the assortment of available state remedies does not govern the waiver of sovereign immunity analysis because:

> judicial restraint constrains the court to avoid creative interpretation of federal or state law which would expand the scope of the waiver without Congressional authorization. The federal waiver, not state law, is the overriding consideration. More specifically ... the extent of the waiver may not be measured solely by the manner in which the state legislature addresses the federal government in its no-fault insurance plan. Rather, the extent of the federal waiver is measured by assessment of how [state] law would treat "a private individual in like circumstances."

*U.S. Fidelity & Guarn. Co. v. U.S.,* 728 F.Supp. 651, 653-54 (D.Utah 1989), *citing, Cf. Ewell By and Through Ewell v. U.S.,* 579 F.Supp. 1291 (D.Utah 1984), *aff'd,* 776 F.2d 246 (10th Cir.1985). Hence, the particular scope of the remedies that may be available under the MVRA does not conclusively control the issue of whether the United States has waived sovereign immunity under the FTCA.

### IV. CONCLUSION

This Court lacks subject matter jurisdiction under 28 U.S.C. § 1346(b) over the claim of intervening Plaintiff, Windsor Insurance Company, because the Kentucky Motor Vehicle Reparation Act does not permit the imposition of liability on the United States for Windsor's subrogation claim. Accordingly, the United States' motion for summary judgment shall be sustained.

IT IS THEREFORE ORDERED AND ADJUDGED:

(1) That Defendant United States' Motion for Summary Judgment against Intervening Plaintiff, Windsor Insurance Company, be, and the same hereby is, SUSTAINED. [Record No. 27].

(2) That the claims of Intervening Plaintiff, Windsor Insurance Company, be dismissed with prejudice and Intervening Plaintiff shall take nothing thereby.

(3) That a final judgment in conformity with this Memorandum Opinion and Order shall this date be entered herein. Fed. R.Civ.P. 54(a).